## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

In re

ANNETTE HARRIS HAYNES
aka ANNETTE HARRIS

              Debtor

Case No. 3:16-bk-30352-SHB
Chapter 7

In re

CLARA IMOGENE WRIGHT

              Debtor

Case No. 3:16-bk-30917-SHB
Chapter 13

In re

PAMELA JO HAGSTROM
fka PAMELA JO YOUNT
fka PAMELA JO MENDOZA

              Debtor

Case No. 3:16-bk-31214-SHB
Chapter 7

**MEMORANDUM OPINION ON CHAPTER 13 TRUSTEE'S AMENDED MOTION TO
COMPEL UPRIGHT LAW TO RESPOND TO DISCOVERY REQUESTS**

**APPEARANCES**:    WINCHESTER, SELLERS, FOSTER & STEELE, PC
                  J. Michael Winchester, Esq.
                  E. Brian Sellers, Esq.
                  800 South Gay Street
                  Post Office Box 2428
                  Knoxville, Tennessee  37901-2428
                  Attorneys for Gwendolyn M. Kerney, Chapter 13 Trustee

SAMUEL K. CROCKER, ESQ.
UNITED STATES TRUSTEE
  Nicholas B. Foster, Esq.
  Historic United States Courthouse
  31 East 11th Street
  4th Floor
  Chattanooga, Tennessee  37402
  Attorney for United States Trustee


GENTRY, TIPTON & MCLEMORE, P.C.
  Maurice K. Guinn, Esq.
  Post Office Box 1900
  Knoxville, Tennessee 37901
  Attorneys for UpRight Law, LLC

**SUZANNE H. BAUKNIGHT**
**UNITED STATES BANKRUPTCY JUDGE**

Several contested matters are pending before the Court concerning Law Solutions Chicago

LLC dba UpRight Law LLC ("UpRight Law") (*see* Mem. & Order entered Jan. 5, 2017 [*Wright*

Doc. 158][1]).  On September 15, 2016, the Court ordered that all rules in Part VII of the Federal

Rules of Bankruptcy Procedure, incorporating the Federal Rules of Civil Procedures, including all

sections of Rule 26 except (a)(1) and (f), shall apply in this contest matter.  [*Wright* Doc. 119.]  As a

result, the parties engaged in discovery, and the Chapter 13 Trustee filed a Motion to Compel

UpRight Law to Respond to Discovery Requests and Motion for Expenses ("Motion to Compel")

[*Wright* Doc. 199], amended on June 19, 2017, by the Chapter 13 Trustee's Amended Motion to

Compel UpRight Law to Respond to Discovery Requests ("Amended Motion") [*Wright* Doc. 226].

## I.  PROCEDURAL POSTURE

The Motion to Compel focused on the validity of the "self-critical analysis privilege" raised

by UpRight Law in response to numerous of the Chapter 13 Trustee's initial interrogatories ("Initial

Interrogatories") and initial requests for production ("Initial RFP").  UpRight Law responded to the

Motion to Compel by abandoning the assertion of the privilege [*Wright* Doc. 207] and standing,

instead, on its assertions that the discovery requests are not relevant to the matters set forth in the

Court's January 5, 2017 Memorandum and Order ("Issues Order"), not proportional to the needs of

the case, and unduly burdensome.  UpRight Law also objected to production of confidential material

before entry of a protective order.[2]  Although UpRight Law included in its response to the Motion to

Compel the text of its initial responses to the discovery requests that were the subject of the Motion

to Compel, which included general objections to some of the requests based on attorney-client

---

[1] All references to the record are to the *Wright* case; however, the same documents have been filed in each of the three cases.

[2] The Court entered a Protective Order [*Wright* Doc. 198] agreed to by UpRight Law and the Chapter 13 Trustee on May 17, 2017, several weeks after UpRight Law's initial responses to the Chapter 13 Trustee's discovery requests were served on April 7, 2017.

1

privilege and/or the work product doctrine, UpRight Law did not argue the issue of attorney-client privilege or work product protections in its response to the Motion to Compel.  [*See Wright* Doc. 207.]

At the May 24 hearing on the Motion to Compel, because of UpRight Law's abandonment of the self-critical analysis privilege and because UpRight Law was preparing to amend or supplement its discovery responses after entry of the Protective Order, it became clear that to the extent a discovery dispute might still exist after the Chapter 13 Trustee received and reviewed UpRight Law's amended and supplemental discovery responses, it would be necessary for the Chapter 13 Trustee to amend the Motion to Compel.  To aid the parties, however, the Court walked through each of the discovery requests raised by the Chapter 13 Trustee in the Motion to Compel to discuss the Court's initial views of UpRight Law's objections to each request.  The parties agreed at the May 24 hearing that  UpRight Law would supplement its discovery responses on or before June 2, when it also would answer the Chapter 13 Trustee's second set of interrogatories ("Second Interrogatories")[3] and requests for production of documents ("Second RFP").  The Court directed the Chapter 13 Trustee to file a status report on or before June 7 to inform the Court of the status of the Motion to Compel in light of the amended and supplemental discovery responses by UpRight Law.

On June 7, the Chapter 13 Trustee filed her status report to advise the Court that UpRight Law had not provided its Amended Answers, Responses, and Objections to Chapter 13 Trustee's First Set of Interrogatories and Requests for Production of Documents ("Amended Responses") [*Wright* Doc. 219-1] until the end of the business day on June 5.  Further, the only additional document produced by UpRight Law after entry of the Protective Order was its operating agreement,

---

[3] UpRight Law agreed to respond to the Chapter 13 Trustee's Second Interrogatories even though they exceed the number allowed in Federal Rule of Civil Procedure 33(a)(1).

2

notwithstanding that UpRight Law had raised numerous objections to production of confidential

material, which objections were expected to be resolved after entry of the Protection Order.

UpRight Law neither sought nor obtained an agreement from the Chapter 13 Trustee to extend the

deadline from June 2 to June 5.   In addition, UpRight Law missed the June 2 extended deadline for

responding to the Second Interrogatories and Second RFP, such responses not being received by the

Chapter 13 Trustee until the afternoon of June 7.[4]  UpRight Law's delay resulted in the Chapter 13

Trustee being unable to analyze the responses to inform the Court of any issues concerning those

responses in the Court-ordered status report.

At a June 8 hearing on the United States Trustee's motion to continue the trial date because

of discovery delays, the Court directed the Chapter 13 Trustee to file any amended motion to compel

on or before June 19 and UpRight Law to file its response on or before June 26, with such amended

motion to be heard on June 29.

The Chapter 13 Trustee filed her Amended Motion on June 19, seeking to compel responses

by UpRight Law to Initial Interrogatories numbered 12, 17, and 23; to Initial RFP numbered 3, 4, 5,

6, 7, 8, 9, 10, 11, 14, 15, 16, 17, 18, 20, 21, 23, and 24; to Second Interrogatories numbered 16; and

to Second RFP numbered 1.  UpRight Law responded to the Amended Motion on June 26, and the

Court held a hearing on the Amended Motion on June 29.

At the June 29 hearing, the parties reached agreement about some of the issues, and the

Court took the matter under advisement as to the remaining issues but directed UpRight Law to file

---

[4] UpRight Law explained its delays to the Court in the Affidavit of Craig Sonnenschein (*Wright* Doc. 250), filed at the Court's direction.  Mr. Sonnenschein explained that when Attorney Guinn sought and obtained an extension to respond to the Second Interrogatories and Second RFP and to amend certain of the discovery responses to the Initial Interrogatories and Initial RFP on the day before the May 23 hearing on the Motion to Compel, he and UpRight Law "recognized that these were aggressive deadlines that would be difficult to meet." [*Id*. at ¶ 9.] Mr. Sonnenschein further stated that "given [UpRight Law]'s finite resources, and the sheer amount of work that it needed to accomplish between May 24 and June 2, it was not able to meet the June 2 deadline." [*Id*. at ¶ 11.]  Mr. Sonnenschein admits, however, that he did not even circulate a draft of the responses to the Second Interrogatories and Second RFP until the morning of June 5, three days after the responses were due.

amended privilege and redaction logs by July 14.  After reviewing the amended logs that were timely filed by UpRight Law, the Court issued an order on July 26 to reset the Amended Motion for August 2 because of the failure of UpRight Law to follow the Court's directives at the June 29 hearing about the content of the amended logs.

UpRight Law filed further amended privilege and redaction logs on the afternoon of August 1, leaving insufficient time for the Court or the Chapter 13 Trustee to review the logs for a determination of their sufficiency under Federal Rule of Civil Procedure 26(b)(5)(A).  At the hearing on August 2, the Court continued the hearing on the Amended Motion to August 9 and directed the parties to be prepared to argue the sanctions issue on that date as well as any remaining privilege issues.  The Court directed the Chapter 13 Trustee to file a status report by noon on August 8, setting forth the trustee's position regarding the sufficiency of the amended logs, and the Court also allowed UpRight Law one final opportunity to amend the logs on or before August 4.  UpRight Law again amended the logs on August 4, making minor changes.  [*Wright* Docs. 261, 262, 263.]

On August 8, the Chapter 13 Trustee filed her Status Report of Chapter 13 Trustee on Amended Motion to Compel UpRight Law to Respond to Discovery Requests [*Wright* Doc. 264] ("Final Reply").  The Final Reply summarized the previous arguments concerning privilege and addressed the request for discovery sanctions by providing an affidavit of counsel setting out the attorneys' fees incurred by the Chapter 13 Trustee for "seeking relief, reviewing discovery and multiple privilege logs, enforcement of disclosures, and participating in discovery motions after good faith conferences and attempts to confer with attorneys representing UpRight Law . . . , excluding any discovery matters or disputes relating to the Layne Gillespie deposition and disputes related thereto."  [*Wright* Doc. 264-1 at ¶ 4.]  The Final Reply makes the following arguments concerning the attorney-client privilege and work product doctrine:

1.  The Chapter 13 Trustee has been trying to obtain sufficient discovery production from UpRight Law since its May 9 letter requesting a pre-motion discovery conference, and the Court has held four hearings on the issue, in addition to the pre-motion conference.  [*Id.* at ¶ 2.]

2.  UpRight Law's initial responses were inadequate and the Wright/Haynes/ Hagstrom Redaction Log was insufficient to adequately invoke attorney-client privilege and/or work product protection.  [*Id.* at ¶ 3.]

3.  UpRight Law's assertion of the "self-critical analysis privilege" was withdrawn only after the Chapter 13 Trustee expended time and expense to research and brief the issue. UpRight Law's insistence on the assertions of privilege did not begin until after abandonment of the "self-critical analysis privilege."  [*Id.* at ¶ 4.]

4.  Although UpRight Law has produced voluminous documents, most of the documents produced are not responsive to the discovery requests, and the documents identified by UpRight Law that are responsive are either redacted or withheld on claims of privilege.  None of the documents produced have been marked to aid in their review, and until July 31, the logs produced in support of the privilege assertions did not identify the discovery request to which the withheld or redacted document is responsive.  [*Id*. at ¶ 5.]

5.  UpRight Law failed to comply with the Court's express directives at the June 29 hearing concerning amendment of the redaction and privilege logs, and the amended logs produced on July 14 did not otherwise meet the requirements of Rule 26(b)(5)(A).  Further, the amended logs produced on July 14 added, for some documents, the claim of work product protection as an additional ground for withholding or redacting the documents and also changed page numbers for some redacted documents.  [*Id*. at ¶¶ 6-8.]

6.   Following the Court's July 26 Order, UpRight Law's further amended logs on July 31 and August 1, respectively, failed to include a sufficient description under Rule 26(b)(5)(A).  For example, the logs failed to identify the client and attorney roles of the individuals identified in the logs as repeatedly directed by the Court and as argued by the Chapter 13 Trustee since the beginning of the discovery dispute.  [*Id.* at ¶ 9-10.]  UpRight Law's amended logs also failed to provide sufficient information for discerning whether the communications at issue constituted legal or business advice, with many of the descriptions appearing to be in the nature of business advice.  [*Id.* at ¶ 11.]  Further, the amended logs failed to provide information sufficient to meet the requisite element of privileged communications – that the document was created under the supervision of an attorney or in anticipation of litigation for the purpose of securing or transmitting legal advice.  [*Id.*]  Nor do the logs show that the documents withheld do not contain or incorporate non-privileged underlying facts.  [*Id.*]  Finally, the trustee questions whether the inclusion of outside counsel in distribution of some items might have been an attempt to "create" privilege where it would otherwise not apply.  [*Id.*]  In sum, the trustee argues that UpRight Law has had at least four opportunities to get the logs right and has failed to do so, causing considerable time and expense by the Chapter 13 Trustee to continually review and re-review the set of documents (which are not numbered or identified as responsive to a particular discovery request) and compare the amended and supplemented responses and document productions to previous productions, following receipt of each of the amended logs.  [*Id.* at ¶ 12.]

7.   The delays by UpRight Law and failures to comply with the Rules and Court instructions caused a continuance of the trial date, and the discovery deadline connected with the continued trial date is imminent, more than half of the extended discovery period

6

having elapsed during this discovery dispute.  [*Id.* at ¶ 13.]  UpRight Law's conduct

evidences a lack of good faith.  [*Id.*]

8.  As to UpRight Law's August 4 amendments ("Third Amended Logs"), the

trustee asserts that it "still appears that UpRight Law has failed to properly assert or support

its claims of the attorney-client privilege and/or the work product doctrine."  [*Id*. at ¶ 15.]

9.  While UpRight Law's citation to *Upjohn v. United States*, 449 U.S. 383 (1981),

is appropriate, the *Upjohn* decision does not provide "blanket protection of all

communications involving in-house counsel without satisfying the other requirements of the

law for sufficient assertion of the privilege."  [*Id*. at ¶¶ 15-16.]

10.  UpRight Law's sharing of the Robinson Group Opinion Letters to non-

privileged third parties and to opposing counsel in informal discovery constituted a subject

matter waiver of any otherwise applicable privileges.  [*Id*. at ¶ 19.]  Additional evidence of

subject matter waiver is Kevin Chern's reference to the Opinion Letters at the August 17,

2016 hearing.  [*Id*. at ¶ 20.]  Further, according to the trustee, many if not most of the

documents withheld or redacted relate to the same type of matters covered by the Opinion

Letters.  [*Id*. at ¶¶ 20-21.]

11.  UpRight Law knowingly and intentionally published communications to third

parties when it failed to object to production of some of the same documents that are now

being withheld to the Tennessee Attorney General by former UpRight Law partner Layne

Gillespie. [*Id*. at ¶¶ 24-25.]

12.  Additionally, UpRight Law waived the privilege asserted as to work product by

failing to raise it in the original logs and asserting it for the first time in amended logs.  [*Id*.

at ¶ 26.]  Further, such a waiver should be deemed a subject matter waiver to the extent that

the documents over which the privilege was waived by failure to raise it are the same

subject matter as documents over which the privilege was raised.  [*Id*. at ¶ 27.]

13.  Based on UpRight Law's acknowledgment that employees and associates of

UpRight Law's local partner attorneys are not employees of UpRight Law, such people are

non-privileged third parties who have access to the "Salesforce" records and other

documents redacted or withheld from the discovery production here.  [*Id*. at ¶ 28.]  The

result is that UpRight Law has waived the privilege as to documents accessible to those

non-privileged third parties.  [*Id.*]

14.  Regarding the work product assertion, the Third Amended Logs fail to provide

any evidentiary showing that withheld documents or information was prepared in

anticipation of litigation, especially those documents that pre-date the Chapter 13 Trustee's

objections and motions for sanctions filed in 2016 in the captioned cases.  [*Id*. at ¶ 29.]

15.  Finally, to the extent UpRight Law has not waived the work product protection,

it has failed to respond to the Chapter 13 Trustee's assertion that fact work product (as

opposed to opinion work product) is discoverable by a showing of substantial need and

inability to obtain the information without material hardship.  [*Id*. at ¶¶ 30-32.]


A final hearing was held on August 9.  At the hearing, UpRight Law responded to several of

the Chapter 13 Trustee's arguments enumerated above.  The Court also clarified the chronology of

this discovery dispute, which will be set out below.  The Amended Motion is fully ripe for

adjudication.

## II.  LATE OBJECTIONS UNDER RULE 33(b)(4)

As a threshold issue, the Court notes that the timing of UpRight Law's Amended Responses,

as well as its initial responses to the Second Interrogatories and Second RFP, raises a question of

potential wholesale waiver of UpRight Law's objections under Federal Rule of Civil Procedure

33(b)(4).  That rule governs objections to interrogatory responses, provides that "[a]ny ground not

stated in a timely objection is waived unless the court, for good cause, excuses the failure."  Fed. R.

Civ. P. 33(b)(4).

UpRight Law's Amended Responses restate the same objections as asserted in its initial

responses except for Initial Interrogatories numbered 17 and 23, for which UpRight Law's Amended

Responses raise additional objections to those stated in UpRight Law's initial responses.  [*Compare

Wright* Doc. 199-2 *with Wright* Doc. 219-1.]  Specifically, UpRight Law's Amended Responses

newly assert a privilege objection to interrogatory numbered 17 (the original response having raised

only that the interrogatory does not reasonably relate to the issues set forth in the Issues Order)[5] and

an objection that the information sought in interrogatory numbered 23 is equally available to the

Trustee (the original response having raised only that the interrogatory is overly broad and unduly

burdensome, not proportional to the needs of the case, and not reasonably related to the issues in the

Issues Order).

UpRight Law did not seek or obtain an agreement with the Chapter 13 Trustee to further

extend the time for providing amended and supplemented responses to the Initial Interrogatories and

Initial RFP or for initial responses to the Second Interrogatories and Second RFP, also due on June

2.  Nor did UpRight Law ask the Court to extend those deadlines before (or after) they expired.

Once the deadline passed, UpRight Law could have asked the Court to excuse the failure to timely

respond for "good cause" under Rule 33(b)(4).  Although the Chapter 13 Trustee raised in her

---

[5] Notwithstanding that UpRight Law added attorney-client privilege to its objections to Initial Interrogatory numbered
17, none of the privilege logs include any reference to this interrogatory.  [*See Wright* Docs. 261, 262, 263.]  As discussed
below, because the asserted privilege belongs to UpRight Law's clients, not UpRight Law, *see Liberty Life Assurance
Co. of Boston v. Smith*, No. 1:07-CV-00050, 1:07-CV-00069, 2010 WL 3064190, at *3 (E.D. Tenn. Aug. 3, 2010), the
Court does not deem UpRight Law's late assertion of privilege or failure to provide a privilege log a waiver of the clients'
privilege.

Amended Motion that the untimely responses detrimentally affected her ability to report to the Court

on June 7, UpRight Law made no attempt to show good cause for the delay, instead arguing in its

written response to the Amended Motion that sanctions would be inappropriate under Rule 37

because UpRight Law had not violated any court order by its delay and that the Chapter 13 Trustee

had not identified how she was prejudiced by a short delay.

Because UpRight Law's Amended Responses timely raised nearly all of the objections at

issue in the Amended Motion and because the Chapter 13 Trustee did not specifically raise the

waiver issue under Rule 33, the Court will not deem UpRight Law's untimely responses and

Amended Responses a Rule 33(b)(4) waiver of the objections raised therein.[6]

### III.  BOILERPLATE OBJECTIONS

Of significantly more concern to the Court is the nature of the objections made by UpRight

Law because they are mere boilerplate objections that this Court could treat as no objection at all.

*See Nissan N. Am., Inc. v. Johnson Elec. N. Am., Inc.*, No. 09-CV-11783, 2011 WL 669352, at *2

(E.D. Mich. Feb 17, 2011) ("Boilerplate or generalized objections are tantamount to no objection at

all and will not be considered by the Court.").  A boilerplate objection has been described as an

objection that

> merely states the legal grounds for the objection without (1) specifying how the
> discovery request is deficient and (2) specifying how the objecting party would be
> harmed if it were forced to respond to the request.  For example, a boilerplate
> objection might state that a discovery request is irrelevant or overly broad without
> taking the next step to explain why.  These objections are taglines, completely
> devoid of any individualized factual analysis.

*Liguria Foods, Inc. v. Griffith Laboratories, Inc.*, ___ F.R.D. ___, 2017 WL 976626, at *1 n.1

(N.D. Iowa Mar. 13, 2017) (quoting Matthew L. Jarvey, *Boilerplate Discovery Objections: How*

---

[6] This acceptance of UpRight Law's objections as timely stated under Rule 33(b) does not extend to the question of whether Upright Law timely complied with Rule 26(b)(5)(A) for its privilege and work production assertions, as discussed *infra*.

*They are Used, Why They are Wrong, and What We Can Do About Them*, 61 Drake L. Rev. 913,

914-16 (2013)).

The use of boilerplate objections is rampant, notwithstanding that there appear to be no

published or unpublished decisions that allow or condone boilerplate objections. *See Liguria*

*Foods, Inc.*, 2017 WL 976626, at *1. The use of boilerplate objections "obstructs the discovery

process, violates numerous rules of civil procedure and ethics, and imposes costs on litigants that

frustrate the timely and just resolution of cases." *Id.* at *10.

> The key requirement in both Rules 33 and 34 is that objections require
> "specificity." . . . "[T]he mere statement by a party that the interrogatory [or
> request for production] was overly broad, burdensome, oppressive and irrelevant
> is not adequate to voice a successful objection"; "[o]n the contrary, the party
> resisting discovery must show specifically how . . . each interrogatory [or request
> for production] is not relevant or how each question is overly broad, burdensome
> or oppressive." *St. Paul Reins. Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D.
> 508, 511-12 (N.D. Iowa 2000) (internal quotation marks and citations omitted). In
> other words, "merely assert[ing] boilerplate objections that the discovery sought
> is vague, ambiguous, overbroad, unduly burdensome, etc. . . . without specifying
> how each [interrogatory or] request for production is deficient and without
> articulating the particular harm that would accrue if [the responding party] were
> required to respond to [the proponent's] discovery requests" simply is not enough.
> *Id.* at 512. Again, I have found nothing to suggest that such responses are now
> considered adequate; rather, there is precedent too ample to cite . . . demonstrating
> the insufficiency of such responses.

> Although Rule 33 contains an express "waiver" provision, explaining that a
> party has waived "[a]ny ground not stated in a timely objection," Rule 34 does not.
> Nevertheless, . . . that does not mean that inadequate responses to requests for
> documents do not constitute waivers:

>> Federal Rule of Civil Procedure 34 does not explicitly provide
>> that a party waives an objection by failing to file a timely response to
>> a request for production of documents. Nonetheless, courts have
>> routinely found that "if the responding party fails to make a timely
>> objection, or fails to state the reason for an objection, he may be held
>> to have waived any or all of his objections." *Scaturro v. Warren &*
>> *Sweat Mfg. Co., Inc.*, 160 F.R.D. 44, 46 (M.D. Pa. 1995) (citing 4A
>> Moore's Federal Practice, § 34.05[2] ) (emphasis in original). *See also*
>> *Henry v. National Housing Partnership*, 2007 WL 2746725 (N.D. Fla.
>> 2007) (finding that the law is "well settled" that a party's failure to file
>> timely objections to a request for production of documents constitutes

a waiver of the objections); *Krewson v. City of Quincy*, 120 F.R.D. 6, 7 (D. Mass. 1988) ("Any other result would completely frustrate the time limits contained in the Federal Rules and give a license to litigants to ignore the time limits for discovery without any adverse consequences.").

In *Cargill, Inc. v. Ron Burge Trucking, Inc.*, 284 F.R.D. 421, 424 (D. Minn. 2012), the Court addressed the issue of whether "the same waiver provision found in Rule 33(b)(4) applies to document requests under Rule 34." After reviewing the history of the "automatic waiver provision" found in Rule 33, the Court noted that recent decisions concerning waiver of objections "reflect broad exercise of judicial discretion." *Id.* at 425.

*Sellars v. CRST Expedited, Inc.*, No. C15-0117, 2016 WL 4771087, at *2 (N.D. Iowa Sept. 13, 2016) (footnote omitted).

*Liguria Foods, Inc.*, 2017 WL 976626, at *9-10.

UpRight Law's brief in response to the Amended Motion contains the kind of information that should have been supplied in its responses and Amended Responses, not several weeks later in preparation for a *third* court hearing on the issue. Only because this discovery dispute is the first substantive discovery dispute in any contested matter or adversary proceeding before the undersigned judge, the Court will not exercise its discretion to treat such objections as so insufficient as to constitute a waiver of objection or "tantamount to no objection at all." *Nissan N. Am., Inc.*, 2011 WL 669352, at *2. In the future, however, boilerplate objections will not be considered by this Court, which will follow the thorough approach to boilerplate objections set forth in *Liguria Foods, Inc.*

## IV. GOVERNING STANDARDS FOR JUDICIAL RESOLUTION OF DISCOVERY DISPUTES

The District Court for the Southern District of Ohio recently thoroughly set out the standard for a court's review of discovery disputes:

Rule 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). If a party objects to the relevance

12

of information sought in discovery, "the party seeking discovery must demonstrate that the requests are relevant to the claims or defenses in the pending action." *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008) (citing *Allen v. Howmedica Leibinger*, 190 F.R.D. 518, 522 (W.D. Tenn. 1999)).  "If that party demonstrates relevancy, the party resisting discovery bears the burden of demonstrating why the request is unduly burdensome or otherwise not discoverable under the Federal Rules." *Id.* at 310 (citing cases).

If a party fails to produce documents, the opposing party may move for an order compelling production. Fed. R. Civ. P. 37(a)(3)(B)(iv). For purposes of subdivision (a) of Rule 37, "an evasive or incomplete disclosure . . . must be treated as a failure to disclose. . . ." Fed. R. Civ. P. 37(a)(4).

Several decisions issued by district courts in the Sixth Circuit have found that the burden is on the resisting party to demonstrate with specificity that a discovery request is unduly burdensome or that the discovery sought is not discoverable under the Federal Rules. *Kafele v. Javitch, Block, Eisen & Rathbone*, No. 2:03-cv-638, 2005 WL 5095186, at *2 (S.D. Ohio Apr. 20, 2005) ("As a general rule, '[a]ll grounds for an objection . . . shall be stated with specificity. . . . The mere statement by a party that an interrogatory or request for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection."). *See also Kline v. Mortgage Elec. Sec. Sys*., No. 3:08-cv-408, 2014 WL 4928984, at *13 (S.D. Ohio Oct. 1, 2014), *on reconsideration in part*, 2014 WL 5460575 (S.D. Ohio Oct. 27, 2014) (same) (citing *In re Heparin Prods. Liab. Litig*., 273 F.R.D. 399 (N.D. Ohio 2011)); *Groupwell Int'l (HK) Ltd. v. Gourmet Exp., LLC*, 277 F.R.D. 348, 360 (W.D. Ky. 2011) (same).

Although the decisions summarized above pre-date the December 1, 2015 amendment of Rule 26(b)(1), nothing in the amended Rule indicates that the allocation of burdens under the Rule has been altered. Courts continue to hold that the party who files a motion to compel discovery "bears the burden of demonstrating relevance." *Albritton v. CVS Caremark Corp.*, No. 5:13-cv-00218, 2016 WL 3580790, at *3 (W.D. Ky. June 28, 2016) (citing *United States ex rel. Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010); *Anderson*, 251 F.R.D. at 309-10). *See also Gazvoda v. Sec. of Homeland Sec.*, 15-cv-14099, 2017 WL 168159, at *4 (E.D. Mich. Jan. 17, 2017); *First Horizon Natl. Corp. v. Houston Cas. Co.*, No. 2:15-cv-2235, 2016 WL 5869580, at *4 (W.D. Tenn. Oct. 5, 2016). If the movant demonstrates relevancy, the burden shifts to the party resisting discovery to demonstrate "why the request is unduly burdensome or otherwise not discoverable." *First Horizon Natl. Corp.*, 2016 WL 5869580, at *4 (quoting *Anderson*, 251 F.R.D. at 310); *Gazvoda*, 2017 WL 168159, at *4. Commentary from the rulemaking process bolsters the position that the amended rule did not shift the burden of proving proportionality to the party seeking discovery. *See* Committee on Rules of Practice and Procedure to the Judicial Conference of the United States, *Report to the Standing Committee*, Rules Appendix B-8 (June 14, 2014), available online at  www.uscourts.gov/file/14140/download?token=McTrl8L0  (explaining that the proposed Committee Note had been revised to address concerns about

13

shifting the burden of proof to the party seeking discovery and to clarify that the Rule as amended does not authorize "boilerplate refusals to provide discovery on the ground that it is not proportional"). The advisory committee's note to Rule 26(b)(1) addresses the parties' burdens under the amended Rule as follows:

> Restoring the proportionality calculation to Rule 26(b)(1) does not . . . place on the party seeking discovery the burden of addressing all proportionality considerations.
>
> . . . .
>
> Nor is the change intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional. . . . [I]f the parties continue to disagree, the discovery dispute could be brought before the court and the parties' responsibilities would remain as they have been since 1983. A party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. . . .

Fed. R. Civ. P. 26(b)(1) advisory committee's note (2015).

*William Powell Co. v. Nat'l Indemnity Co.*, No. 1:14-cv-00807, 2017 WL 1326504, at *5-6 (S.D. Ohio Apr. 11, 2017).

Amended Rule 26(b) sets forth the following six factors to be considered in determining whether a party is entitled to discovery: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

> It also is important to repeat the caution that the monetary stakes are only one factor, to be balanced against other factors. The 1983 Committee Note recognized "the significance of the substantive issues, as measured in philosophic, social, or institutional terms. Thus the rule recognizes that many cases in public policy spheres, such as employment practices, free speech, and other matters, may have importance far beyond the monetary amount involved." Many other substantive areas also may involve litigation that seeks relatively small amounts of money, or

no money at all, but that seeks to vindicate vitally important personal or public
values.

Fed. R. Civ. P. 26(b) advisory committee's note to 2015 amendment.

## V.  PRIVILEGE ISSUES

In addition to boilerplate objections that the Chapter 13 Trustee's requests are overbroad and

unduly burdensome, UpRight Law asserts that much of what the trustee seeks is protected by either

the attorney-client privilege and/or the work product doctrine.  UpRight Law is correct that federal

common law governs questions of privilege and attorney work-product in federal question cases,

including contested matters based in the Bankruptcy Code.  [*See Wright* Doc. 231, pp. 3-4.]  The

Sixth Circuit Court of Appeals has explained that analysis of an assertion of attorney-client

privilege is a "mixed question of law and fact."  *Reed v. Baxter*, 134 F.3d 351, 355 (6th Cir. 1998).

UpRight Law must show the following elements of the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser
> in his capacity as such, (3) the communications relating to that purpose, (4) made
> in confidence (5) by the client, (6) are at his instance permanently protected (7)
> from disclosure by himself or by the legal adviser, (8) unless the protection is
> waived.

*Id.* at 355-56.

As for the work-product doctrine, UpRight Law correctly argues that the Court must ask

two questions:  "(1) whether th[e] document was prepared 'because of' a party's subjective

anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that

subjective anticipation was objectively reasonable." [*Wright* Doc. 231, p. 8 (citing *United States. v.*

*Roxworthy*, 457 F.3d 590 (6th Cir. 2006)).]  In addition, as noted by UpRight Law, "[o]nce it is

established that a document is work product, a court has to make a further determination of whether

the work product is fact work product or opinion work product."  [*Wright* Doc. 231, p. 9.]  This is

because opinion work product is absolutely protected from disclosure while fact work product may

be obtained if the party seeking the discovery can show a substantial need for materials and an

inability to otherwise obtain the materials without undue hardship. *See Tenn. Laborers Health &*

*Welfare Fund v. Columbia/HCA Healthcare Corp. (In re Columbia/HCA Healther Corp. Billing*

*Practices Litig.)*, 293 F.3d 289, 294 (6th Cir. 2002).

UpRight Law provided privilege and redaction logs to the Chapter 13 Trustee, but the trustee

argues the logs are insufficient to assert a claim of privilege under Federal Rule of Civil Procedure

26 because UpRight Law has not provided information necessary to assess whether the privilege is

warranted.  [*Wright* Doc. 226, p. 10.]  In response, UpRight Law argues that the Chapter 13

Trustee's "general objections" are insufficient to challenge UpRight Law's privilege and work-

product assertions because she has not identified specific entries to which the privileges should not

apply.  [*Wright* Doc. 231, pp. 10-11.]  The Chapter 13 Trustee explained at the June 29 hearing that

UpRight Law's logs provided insufficient information for assessment of the privilege claims.  The

Court agreed at the June 29 hearing with the Chapter 13 Trustee that the privilege and redaction

logs were insufficient under Rule 26.

As a threshold matter, the privilege and redaction logs supplied to the Court with the Motion

to Compel and Amended Motion were unsigned, and the logs were not provided

contemporaneously with the signed discovery responses.  Rule 26(g) governs signatures of

discovery responses, including objections.  Fed. R. Civ. P. 26(g).  The rule states that counsel of

record must sign responses and objections "in the attorney's own name."  Such signature indicates

that the attorney is certifying

> that to the best of the person's knowledge, information, and belief *formed after a*
> *reasonable inquiry* . . .  with respect to a discovery request, response, or objection,
> it is:
>
>    (i) consistent with the[] rules and warranted by existing law or by a
>    nonfrivolous argument for extending, modifying, or reversing existing law, or for
>    establishing new law;

16

(ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

(iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

Fed. R. Civ. P. 26(g)(1)(B) (emphasis added).[7]

On questioning by the Court at the June 29 hearing, counsel of record for UpRight Law indicated that he had not reviewed each item in the privilege logs to determine whether the assertion of any privilege was appropriate.  The Court directed Attorney Guinn to provide amended logs, signed by him after review of each item (*i.e.*, after the "reasonable inquiry" required by Rule 26(g)).

Rule 26(b)(5)(A) requires that a party asserting privilege "describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Such a description is accomplished through production of privilege logs that identify documents or information withheld on the basis of privilege.

Courts require the following to be included in privilege logs:

1. A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.;

2. The date upon which the document was prepared;

3. The date of the document (if different from # 2);

4. The identity of the person(s) who prepared the document;

---

[7] The Court observes that Kevin Chern was admitted *pro hac vice* in these cases [*Wright* Doc. 85] and that Mr. Chern signed the Verifications included with UpRight Law's initial responses and Amended Responses, but only as "Managing Partner of UpRight Law" to certify under penalty of perjury that he read the responses to the Initial Interrogatories and Initial RFP and that the answers and responses were true and correct.  [*Wright* Doc. 219-1, p. 41.]  The Verification, however, does not refer to any privilege or redaction logs.  Nor does Attorney Guinn's signature on the responses indicate any reference to the logs, and the Amended Responses indicate only that UpRight Law "will produce a privilege log." The logs and amended logs themselves were unsigned, causing the Court to question Attorney Guinn about whether he had reviewed them before submitting them to the Chapter 13 Trustee.

5. The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed, "including an evidentiary showing based on competent evidence supporting any assertion that the document was created under the supervision of an attorney;"

6. The purpose of preparing the document, including an evidentiary showing, based on competent evidence, "supporting any assertion that the document was prepared in the course of adversarial litigation or in anticipation of a threat of adversarial litigation that was real and imminent;" a similar evidentiary showing that the subject of communications within the document relates to seeking or giving legal advice; and a showing, again based on competent evidence, "that the documents do not contain or incorporate non-privileged underlying facts;"

7. The number of pages of the document;

8. The party's basis "for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and

9. Any other pertinent information necessary to establish the elements of each asserted privilege."

*Cooey v. Strickland*, 269 F.R.D. 643, 649 (S.D. Ohio 2010) (quoting *In re Universal Service Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 673 (D. Kan. 2005) (quoting *Hill v. McHenry*, No. 99-2026-CM, 2002 WL 598331, at *8 (D. Kan. Apr. 10, 2002))).[8]

UpRight Law's initial privilege and redaction logs included columns for the document date, recipient, author, "type of document," "subject matter," and privilege type.  The Court expressed concern at the June 29 hearing that the initial privilege and redaction logs supplied in response to the Chapter 13 Trustee's discovery requests contained insufficient information for the Court to review the logs to determine whether they were sufficient on their face.  The Court directed UpRight Law to amend the privilege and redaction logs to include the following for each item in the logs:  (1) a reference to the interrogatory or request for production to which the item is

---

[8] UpRight Law argued at the August 9 hearing that the *Cooey* court's list of items to be included in a privilege log is more than the Rule requires.  The Court, however, has not required UpRight Law to include each of the items listed in *Cooey*.

responsive; (2) a description, which the Court called a "cast list," to identify the authors and

recipients of the materials claimed to be protected from discovery; (3) for each person named, an

identification of the role for that person (*i.e.*, client or attorney) for each item listed; and (4) for

claims of protection under the work-product doctrine, identification of whether the work product is

fact or opinion.  The Court also noted a number of particular items in each log for which the

description of subject matter was insufficient for the Court to understand the privilege assertion

short of an *in camera* review.  The Court asked for the amended logs to include additional

specificity in the description of numerous items to provide sufficient context for analysis of the

privilege claims.

On review of UpRight Law's amended logs filed on July 14, as directed at the June 29

hearing, the Court was astonished to discover that the amended logs contained very few of the

items directed to be provided by the Court at the June 29 hearing.  The amended logs provided a

"cast list" but no contextual role identification for the recipients or authors of the items in the log.

Nor did the logs provide any indication of the interrogatory or request for production to which the

item listed was responsive.  The amended logs did indicate (for most work-product claimed entries)

whether the work product is fact or opinion, but the descriptions of the logged materials were

nearly identical to those that the Court indicated were insufficiently specific to avoid an *in camera*

review.

UpRight Law has argued that a two-step process is necessary to challenge the assertion of

privileges.  [*Wright* Doc. 231, pp. 10-11.]  First, the Chapter 13 Trustee must provide a "factual

basis to support a belief by a reasonable person that review of specific materials would show they

were classified in error or in bad faith."  [*Id.*]  Only after such a showing, explains UpRight Law,

may the trustee request that the Court conduct an *in camera* review of any specific documents for

which the trustee asserted a "factually based, good faith belief that an *in camera* inspection would

show a document was not privileged or otherwise protected." [*Wright* Doc. 231, p. 11.]

The chronology of this discovery dispute is central to the Court's determination of the

privilege and work product issues here.  The following is established by the record:

| | |
|---|---|
| March 7, 2017 | The Chapter 13 Trustee served her Initial Interrogatories and Initial RFP. [*Wright* Doc. 199-1.] |
| April 7, 2017 | UpRight Law served its initial responses to the discovery requests, providing an undated and unsigned "Wright Hagstrom Haynes Redaction Log" ("Wright/Hagstrom/Haynes Log") soon after service of the responses. [*Wright* Docs. 199-2, 199-3.]  Notably, the initial response to Initial RFP 18 states that "UPRIGHT LAW will produce a privilege log." [*Wright* Doc. 199-3, p. 26.]  When finally amended to include references to discovery requests, however, the Wright/Hagstrom/Haynes Log did not include any item related to Initial RFP 18 [*Wright* Doc. 261], and the first attempt at a privilege log relating to this RFP was not provided until early June, after UpRight Law amended its responses (which initial privilege log was unsigned and undated and did not provide basic information, including the discovery requests to which items in the log were responsive (as discussed in more detail *infra*)). [*Wright* Docs. 226-4, 262.] |
| April 26, 2017 | The Chapter 13 Trustee served the Second Interrogatories and Second RFP. [*Wright* Doc. 207, p. 5.]  Although the trustee failed to seek Court permission to exceed the limit on interrogatories in Rule 33(a)(1), UpRight Law waived its right to object to the additional requests in exchange for an additional week (until June 2, 2017) to respond.  [*Wright* Doc. 231, pp. 36-37) |
| May 9, 2017 | The Chapter 13 Trustee filed a pre-motion letter asking for a pre-motion conference (in compliance with the Pretrial Order [*Wright* Doc. 164, p. 3.]). [*Wright* Doc. 190.] |
| May 10, 2017 | The Court held the pre-motion telephone conference. [*Wright* Doc. 192.] |
| May 17, 2017 | The trustee filed her Motion to Compel. [*Wright* Doc. 199.] |

20

| | |
|---|---|
| May 17, 2017 | The Agreed Protective Order between UpRight Law and the Chapter 13 Trustee was entered, making it ripe for UpRight Law to provide documents previously withheld (notably, without any log) as confidential. [*Wright* Doc. 198.] |
| May 22, 2017 | UpRight Law provided a copy of a single document previously withheld as confidential (its operating agreement) but no other "confidential" documents. [*See Wright* Doc. 219.] |
| May 23, 2017 | UpRight Law responded to the Motion to Compel, abandoning its "self-critical analysis privilege" and arguing that it was standing on its attorney-client privilege and protections of the work product doctrine. [*Wright* Doc. 207.] |
| May 24, 2017 | The first hearing on this discovery dispute was held.  [*Wright* Doc. 208.] At the hearing, because of the abandonment of the self-critical analysis privilege, which was the primary focus of the Chapter 13 Trustee's legal argument in support of the Motion to Compel, the Court directed the trustee to file a status report after receipt of UpRight Law's amended production to the Initial Interrogatories and Initial RFP, which the parties agreed would be provided no later than June 2, along with UpRight Law's responses to the Second Interrogatories and Second RFP. [*See Wright* Docs. 208, 217.] At this first hearing, the Court walked through each interrogatory and request for production raised in the trustee's Motion to Compel to give the parties additional direction (akin to a pre-motion conference). |
| June 2, 2017 | UpRight Law failed to meet the June 2 deadlines.  [*Wright* Doc. 250.] |
| June 5, 2017 | Late on this Monday afternoon, UpRight Law served its Amended Responses but did not produce any additional documents or any privilege logs.  [*Wright* Docs. 219, p. 5; 219-1.] |
| June 7, 2017 | UpRight Law finally responded to the Second Interrogatories and Second RFP on this afternoon, with insufficient time for the Chapter 13 Trustee to review them in advance of filing the Court-directed status report. [*Wright* Docs. 219; 226-1.]  The trustee filed her status report as directed.  [*Wright* Doc. 219.] |

| June 7, 2017 | Apparently[9] also late on this afternoon, UpRight Law provided the UpRight Law Redaction Log: Amended Production to Chapter 13 Trustee ("Initial Redaction Log") and the UpRight Law Privilege Log: Amended Production to Chapter 13 Trustee ("Initial Privilege Log") (collectively, the "Initial Logs").  [*Wright* Docs. 226-3, 226-4.]  (Notwithstanding that UpRight Law pledged in its May 23 response to the Motion to Compel that it would "produce a revised log that more clearly describes the basis for its remaining redactions" as to Initial RFP 24 [*Wright* Doc. 207, p. 15], UpRight Law did not amend the Wright/Hagstrom/Haynes Log until July 14, 2017.  [*Wright* Doc. 246-1.])  These Initial Logs were unsigned and undated, and Attorney Guinn acknowledged at the June 29 hearing that he had not reviewed these logs or the documents/information that had been withheld. |
| June 8, 2017 | The Court held a status conference on the discovery dispute[10] and directed the Chapter 13 Trustee to file an amended motion to compel by June 19, with UpRight Law being required to respond in writing by June 26, to be followed by a hearing on June 29.  [*Wright* Doc. 222.] |
| June 19, 2017 | The Chapter 13 Trustee filed the Amended Motion. [*Wright* Doc. 226.] |
| June 26, 2017 | UpRight Law responded to the Amended Motion (and for the first time raised more than boilerplate objections).  [*Wright* Doc. 231.] |
| June 29, 2017 | The Court held its third hearing on the discovery dispute. [*Wright* Doc. 235.]  The parties reached agreement on some matters (see discussion *infra*), and the Court took the remaining issues under advisement but directed UpRight Law to amend the logs by July 14, with specific instructions as to the deficiencies that needed to be corrected in the logs when amended. [*Wright* Doc. 252, p. 5.] |

---

[9] At the August 9 hearing, the parties could not state exactly what date that UpRight Law provided the Initial Logs; however, the Court listened to the recording of the June 8 hearing, and at that hearing, Mr. Winchester informed the Court that the Initial Logs were received at approximately 5:45 p.m. on June 7.  [June 8 Hrg. Recording at 10:59:59 AM.]

[10] The Court also heard and granted without opposition the United States Trustee's Motion to Continue Trial Date and Other Deadlines [*Wright* Doc. 211], which was necessitated because of the discovery dispute. [*Wright* Doc. 221.]

| July 7, 2017 | The Court ordered the trustee to provide information about the source of certain legal ethics opinion letters and directed UpRight Law to address in its amended logs whether the matters withheld from production were related to those opinion letters. [*Wright* Doc. 238.] |
|---|---|
| July 14, 2017 | UpRight Law filed the following documents pertinent to this decision: (1) UpRight Law Amended Redaction Log: Amended Production to Chapter 13 Trustee [*Wright* Doc. 245-1]; (2) Amended Wright, Hagstrom, Haynes Redaction Log [*Wright* Doc. 246-1]; and (3) UpRight Law Amended Privilege Log: Amended Production to Chapter 13 Trustee [*Wright* Doc. 247-1] (collectively, the "First Amended Logs"). <br><br> As discussed *supra*, UpRight Law failed to comply with the Court's instructions about the logs.  Specifically, UpRight Law failed to include any indication of the interrogatories or requests for production to which the item listed is responsive – one of the most basic requirements for privilege logs to comply with Rules 26(b)(5)(A), 33(b)(4), and 34(b)(2)(C).  The First Amended Logs were finally signed by counsel of record and provided a "cast list" but contained no contextual role identification for the recipients or authors of the items in the logs, which was expressly directed by the Court at the June 29 hearing. The First Amended Logs also failed to mention the opinion letters and/or the identifying information that was directed to be included by the July 7 Order. <br><br> Further, a comparison of the Amended Redaction Log [*Wright* Doc. 245-1] with the initial redaction log [*Wright* Doc. 226-3] reveals one new item dated "10/__/15," described as "Partners Newsletter, October 2015, page 3" [*Wright* Doc. 245-1, p. 1]; changes to page numbers for items dated July 7, 2016 [*Id.*, p. 3]; and, most significantly, includes the addition of a claim of work product protection[11] for four items (dated July 26, 2016; July 19, 2016; and July 7, |

---

[11] The Court finds that UpRight Law waived its objection on the basis of the work product doctrine by not raising it in the first log.  *See Liguria Foods, Inc. v. Griffith Laboratories, Inc.*, ___ F.R.D. ___, 2017 WL 976626, at *9-10 (N.D. Iowa Mar. 13, 2017); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 267 (D. Md. 2008).

| | |
|---|---|
| | 2016 (the same two items that identified different page numbers from the Initial Redaction Log)) [*Id.*, pp. 2-3]. |
| July 26, 2017 | As a result of UpRight Law's failure to comply with the Court's directives, the Court issued an Order [*Wright* Doc. 251] that set the Amended Motion for hearing on August 2. |
| July 31 & August 1, 2017 | UpRight Law again amended the logs, filing the following documents:  (1) UpRight Law Second Amended Redaction Log: Amended Production to Chapter 13 Trustee [*Wright* Doc. 258-1]; (2) Second Amended Wright, Hagstrom, Haynes Redaction Log [*Wright* Docs. 255-1, 256]; and (3) UpRight Law Second Amended Privilege Log: Amended Production to Chapter 13 Trustee [*Wright* Doc. 259-1] (collectively, the "Second Amended Logs").  UpRight Law, for the first time, identified the discovery requests to which each item in the logs relate and added a "purpose" column and some edits to the "subject matter" column. |
| August 2, 2017 | A fourth hearing on the discovery dispute was held [*Wright* Doc. 260], and the Court set a final hearing on the Amended Motion for August 9, directing UpRight Law to file any final amendments to the logs in red-lined form no later than close of business on August 4, and directing the Chapter 13 Trustee to review the final version of the logs and provide a status report to the Court by noon on August 8. |
| August 4, 2017 | UpRight Law filed its fourth iteration of the logs (the Third Amended Logs) as follows:  (1) UpRight Law Third Amended Redaction Log: Amended Production to Chapter 13 Trustee [*Wright* Doc. 263]; (2) Third Amended Wright, Hagstrom, Haynes Redaction Log [*Wright* Doc. 261]; and (3) UpRight Law Third Amended Privilege Log: Amended Production to Chapter 13 Trustee [*Wright* Doc. 262]. |
| August 8, 2017 | The Chapter 13 Trustee filed her Final Reply. [*Wright* Doc. 264.] |
| August 9, 2017 | The Court held a fifth and final hearing on the discovery dispute. [*Wright* Doc. 265.] |

24

At the August 9 hearing, the Court confirmed that UpRight Law had not provided the first

iteration of logs (other than the Wright/Hagstrom/Haynes Log) until sixty-one days after UpRight

Law's initial responses were served on the trustee.  UpRight Law argued that it was not obligated to

provide any logs for discovery requests for which it had raised scope or burden objections until the

parties reached an agreement at the May 24 hearing for UpRight Law to amend its responses on or

before June 2.  The Court rejects such an assertion, in part, because UpRight Law's initial response

to Initial RFP 18 indicated that "UPRIGHT LAW also will produce a *privilege* log."  [*Wright* Doc.

199-3, p. 26.] Notably, the Wright/Hagstrom/Haynes Log produced in connection with UpRight

Law's initial responses in April was identified as a *redaction* log, not a *privilege* log.  Further,

review of the July 31 version of the Wright/Hagstrom/Haynes Log [*Wright* Doc. 255] – the first

such log to identify the discovery requests to which each listed item relates – reflects no reference

to Initial RFP 18.  Thus, the Court does not accept that UpRight Law had no obligation to provide a

privilege log under Rule 26(b)(5)(A) until June 7 when it amended its responses.

Moreover, the Initial Logs provided on June 7 did not meet the most minimum requirements

of the Rules because they failed to identify the discovery requests to which they related, were

unsigned, and had not been reviewed by UpRight Law's counsel of record.  *See* Fed. R. Civ. P.

26(b)(5)(A), 26(g), 33(b)(4), and 34(b)(2)(C).  This means that UpRight Law failed to comply with

the requirements of Rule 26(b)(5)(A) from April 7, 2017, to July 31, 2017 (when it provided the

Second Amended Logs that finally contained basic elements of (1) a signature of counsel of record;

(2) after review of the documents and privilege claims; and (3) identification of the discovery

requests to which the logged items related) – *a total of 115 days.*

Further, even if the Court were to construe the timing of UpRight Law's obligation to

provide logs under Rule 26(b)(5)(A) as arising out of its Amended Responses served on June 5, the

25

first minimally acceptable[12] logs (*i.e.*, the Second Amended Logs) were not served by UpRight

Law until July 31 and August 1, *fifty-six and fifty-seven days* after such logs were first required

under the Rules.  Also notable is that the production of the Second Amended Logs occurred a full

week *after* the date initially set for trial to begin in this matter – July 24.

The Court agrees with UpRight Law that the privilege question must be analyzed under the

Supreme Court's decision in *Upjohn v. United States*, 449 U.S. 383 (1981), that "the 'control

group' test adopted by the [appellate court] would interfere with attorneys' ability to obtain

necessary information from low- and middle-level employees, and corporations' ability to

communicate legal advice to those same employees." *Williams v. Duke Energy Corp.*, No. 1:08-cv-

00046, 2014 WL 3895227, at *3 (S.D. Ohio Aug. 8, 2014).  Thus, communications "made by

[UpRight Law] employees [or partners] to counsel for [UpRight Law] acting as such, at the

direction of [firm] superiors in order to secure legal advice from counsel" would be protected by

attorney-client privilege when "[t]he communications concerned matters within the scope of the

employees' [or partners'] [firm] duties." *Upjohn*, 449 U.S. at 391-92, 394.  "In turn,

communications from the attorney to the client are also privileged if their disclosure would reveal

the client's confidential communications to the attorney." *Nesse v. Shaw Pittman*, 206 F.R.D. 325,

328 (D.D.C. 2002).

Nevertheless, while this Court recognizes the importance of protecting the attorney-client

privilege in order to encourage "full and frank communication between attorneys and their

clients," *Upjohn*, 449 U.S. at 389, the proponent of the privilege must meet its burden under Rule

26(b)(5)(A).  Further, privileges "must be strictly construed and accepted 'only to the very limited

extent that permitting a refusal to testify or excluding relevant evidence has a public good

---

[12] Although the Second Amended Logs were minimally compliant with the Rules' basic requirements, they still did not
meet UpRight Law's burden under Rule 26(b)(5)(A).

transcending the normally predominate principle of utilizing all rational means for ascertaining truth.'" *United States v. Porter*, 986 F.2d 1014, 1019 (6th Cir. 1993) (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1980)).  As explained by the Second Circuit (in a case cited with approval by the Sixth Circuit Court of Appeals in *In re Search Warrant Executed at Law Offices of Stephen Garea*, No. 97-4112, 1999 WL 137499, at *2 (6th Cir. Mar. 5, 1999)):

> To facilitate its determination of privilege, a court may require "an adequately detailed privilege log in conjunction with evidentiary submissions to fill in any factual gaps." *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993); *see also In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992). The privilege log should:

>> identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure. Other required information, such as the relationship between . . . individuals not normally within the privileged relationship, is then typically supplied by affidavit or deposition testimony.  Even under this approach, however, if the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected.

> *Bowne*, 150 F.R.D. at 474 (citations omitted); *see also von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 146 (2d Cir.), *cert. denied*, 481 U.S. 1015 (1987); *In re Grand Jury Subpoena Dtd. Jan. 4, 1984*, 750 F.2d 223, 224–25 (2d Cir. 1984).

*United States v. Construction Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996).

UpRight Law's failure to comply with Rule 26(b)(5)(A) continues even with the Third Amended Logs (which, again, are the fourth iteration).  UpRight Law stubbornly stands on *Upjohn*[13] in response to the Chapter 13 Trustee's or the Court's insistence on additional information.  The most glaring defect relates to the Court's repeated direction to UpRight Law to provide information about the roles of the individuals identified in the logs and information about who is the client and who is the attorney.  Such information is necessary because the party here is

---

[13] The majority of amendments to the Third Amended Logs was the addition of footnotes to various log entries to cite to UpRight Law's *Upjohn* argument.

27

a law firm whose business practices are at the center of the ultimate issues before the Court. *See United States v. BAE Sys. Tactical Vehicle Sys., LP*, No. 15-12225, 2017 WL 1457493, at *4 (E.D. Mich. Apr. 25, 2017) ("When a lawyer provides non-legal services, such as supplying business advice, the privilege does not attach."); *John B. v. Goetz*, 879 F. Supp. 2d 787, 894-95 (M.D. Tenn. 2010) ("'[T]he attorney-client privilege protects only communications pertaining to legal assistance and advice and does not extend to business advice given by an attorney to a client, or to interclient communications designed to communicate only business or technical data. [Citations omitted.] . . . .' *First Wisconsin Mortg. v. First Wisconsin Corp.*, 86 F.R.D. 160, 174 (E.D.Wis.1980) (emphasis in the original and citations omitted). *Accord SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 517 (D. Conn. 1976) ('To protect the business components in the decisional process would be a distortion of the privilege. The attorney-client privilege was not intended and is not needed to encourage businessmen to discuss business reasons for a particular course of action.').").

In *Nesse v. Shaw Pittman*, 206 F.R.D. 325 (D.D.C. 2002), the defendant-law firm sought to protect a series of notes taken by a partner in the firm under assertions of attorney-client privilege and the work product doctrine. The notes resulted from six meetings, some of which included outside counsel and all of which included other lawyers in the defendant law firm. The court stated, "In assessing the applicability of the attorney-client privilege to [the attorney's] notes, it helps to pinpoint the roles of the key individuals who were involved in the various communications. In addition, because the privilege applies to particular communications, I shall trace the applicability of the privilege through a complex series of communications, from the point of origin at . . . [the] lawyers' lips to the moment when the ink met the paper on [the attorney's] note pad." *Id.* at 328. Because UpRight Law has refused to identify the attorney and client (or the source of legal advice shared in interclient communications), the Court finds that UpRight Law has

28

failed to provide adequate information under Rule 26(b)(5)(A). Thus, setting aside the delays and failures of UpRight Law to comply with the Court's orders, the privilege and redaction logs simply do not meet UpRight Law's burden on the privilege and work product issues.

UpRight Law has at times argued against *in camera* review (asserting that the Chapter 13 Trustee has not shown grounds for *in camera* review [*Wright* Doc. 231, p. 11]) and at times (*e.g.,* at the August 9 hearing) invited *in camera* review. Such dichotomy is not unusual. As Magistrate Judge Grimm noted when discussing privilege disputes, motions to compel resulting from inadequate privilege logs are met "often with the producing party's 'magnanimous' offer to produce the documents withheld for *in camera* review.'" *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 265 (D. Md. 2008). As explained by Judge Grimm, "*In camera* review, however, can be an enormous burden to the court, about which the parties and their attorneys often seem to be blissfully unconcerned." *Id.*

The following approach to *in camera* review makes sense to the undersigned judge, who is addressing the question for the first time:

> It should go without saying that the court should never be required to undertake *in camera* review unless the parties have first properly asserted privilege/protection, then provided sufficient factual information to justify the privilege/protection claimed for each document, and, finally, met and conferred in a good faith effort to resolve any disputes without court intervention. *United States v. Zolin*, 491 U.S. 554, 571-72 (1989) ("[W]e cannot ignore the burdens *in camera* review places upon the district courts, which may well be required to evaluate large evidentiary records without open adversarial guidance by the parties . . . . Before engaging in *in camera* review . . . 'the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person' . . . that *in camera* review of the materials may reveal evidence to establish the claim [of privilege/protection[14]]".) (internal

---

[14] The Court recognizes that Judge Grimm's quotation of the Supreme Court decision in *Zolin* extends that decision concerning the crime-fraud exception to a general privilege or work product situation without crime-fraud implications. Research of Sixth Circuit law, however, revealed no contrary rules concerning when a trial court is required to conduct *in camera* review. To the contrary, some trial courts within the Sixth Circuit have followed a reasoning similar to Judge Grimm's and refused to conduct an *in camera* review when the privilege log was inadequate. *See, e.g., William Powell Co. v. National Indem. Co.*, No. 1:14-CV-00807, 2017 WL 1326504, at *20 (S.D. Ohio Apr. 11, 2017) (requiring the proponent of the privilege to either revise the privilege log to provide necessary information or produce the documents it had withheld); *Nurse Notes, Inc. v. Allstate Ins. Co.*, No. 10-CV-14481, 2011 WL 2173934, *4 (E.D. Mich. June 2, 2011) (declining to conduct *in camera* review when the privilege log was inadequate under Rule 26(b)(5)(A)).

citations omitted); *United States v. Family Practice Assocs. Of San Diego*, 162 F.R.D. 624, 627 (S.D. Cal. 1995) ("Prior to an *in camera* review there must first be sufficient evidentiary showing of a legitimate issue as to application of a privilege or other protection.  *In camera* review should not replace effective adversarial testing of the claimed privileges and protection."); *Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 700 (D. Nev. 1994) ("*In camera* review is generally disfavored.  It is not to be used as a substitute for a party's obligation to justify its withholding of documents.  *In camera* review should not replace the adversarial testing of the claimed privileges and protections.  Resort to *in camera* review is appropriate only after the burdened party has submitted detailed affidavits and other evidence to the extent possible.") (internal citations omitted); and *Caruso v. Coleman Co.*, Civ. A. No. 93-CV-6733, 1995 WL 384602, at *1 (E.D. Pa. June 22, 1995) ("[R]esort to *in camera* review is appropriate only after the burdened party has submitted detailed affidavits and other evidence to the extent possible. Unfortunately, this court is put in the untenable position of having to speculate in order to determine which privileges apply to the individual documents. A court has the right to refuse to engage in such speculation, since the burden of proving the attorney-client or work-product privileges rests on the party claiming the privilege.") (internal citations omitted) (emphasis in original); *Weber v. Paduano*, No. 02 Civ. 3392, 2003 WL 161340, at *14 (S.D.N.Y. Jan. 22, 2003) (holding *in camera* review should not be undertaken routinely, but only after the party asserting privilege has submitted an adequate record to support the claim); *Bowne of New York City v. AmBase Corp.*, 150 F.R.D. 465, 475 (S.D.N.Y. 1993) ("AmBase's suggestion of *in camera* review in lieu of an evidentiary presentation is misplaced. Such review . . . is not, however, to be routinely undertaken, particularly in a case involving a substantial volume of documents, as a substitute for a party's submission of an adequate record in support of its privilege claims."); and *King v. Conde*, 121 F.R.D. 180, 190 (E.D.N.Y. 1988) ("After giving defendants an opportunity to respond (with a brief and possible supplemental affidavits or declarations), the court can determine whether the defendants have made the requisite threshold showing to invoke the privilege. If the court finds that the defendant has not satisfied its threshold burdens, direct disclosure is in order. If the threshold burdens are met, the court may then review the materials at issue in camera and decide which, if any to withhold from disclosure.").

. . . .

    Thus, insuring that a privilege or protection claim is properly asserted in the first instance and maintained thereafter involves a several step process. First, pursuant to Fed. R. Civ. P. 26(b)(5), the party asserting privilege/protection must do so with particularity for each document, or category of documents, for which privilege/protection is claimed. At this first stage, it is sufficient to meet the initial burden by a properly prepared privilege log. If, after this has been done, the requesting party challenges the sufficiency of the assertion of privilege/protection, the asserting party may no longer rest on the privilege log, but bears the burden of establishing an evidentiary basis — by affidavit, deposition transcript, or other evidence — for each element of each privilege/protection claimed for each

document or category of document. A failure to do so warrants a ruling that the documents must be produced because of the failure of the asserting party to meet its burden. If it makes this showing, and the requesting party still contests the assertion of privilege/protection, then the dispute is ready to submit to the court, which, after looking at the evidentiary support offered by the asserting party, can either rule on the merits of the claim or order that the disputed documents be produced for *in camera* inspection.

*Victor Stanley, Inc.*, 250 F.R.D. at 266-67; *see also United States ex rel. Schaengold v. Memorial Health, Inc.*, No. 4:11-CV-58, 2014 WL 5767042, at *5 (S.D. Ga. Nov. 5, 2014) (declining to engage in *in camera* review when the proponent failed to give the court a reason to believe that such review may uncover evidence establishing privilege).

Here, rather than providing the information directed by the Court on numerous occasions, UpRight Law now wants the Court to review the documents *in camera* to determine whether they are privileged or protected. This the Court will not do. Not only is the Court concerned about the lack of "adversarial testing" referenced by Judge Grimm in *Victor Stanley*, but the Court also recognizes that the Court, as fact-finder, could have difficulty un-seeing whatever might be seen in an *in camera* review. Thus, the Court will not conduct an *in camera* review when the proponent of the privilege/protection has failed to comply with Rule 26(b)(5)(A), especially when, as here, the Court has given the proponent repeated opportunities to get it right, including express instructions about what should be included in privilege logs.

In short, enough is enough. I must find that UpRight Law's refusal to comply with Rule 26(b)(5)(A) and this Court's orders after multiple chances to do so constitutes a waiver of the objection to production of the documents under Rules 33 and 34. *See Liguria Foods, Inc. v. Griffith Laboratories, Inc.*, ___ F.R.D. ___, 2017 WL 976626, at *9-10 (N.D. Iowa Mar. 13, 2017).

## VI.  ANALYSIS OF SPECIFIC REQUESTS

1.      *Initial Interrogatory Numbered 12 and Initial RFP 11*

**INTERROGATORY NO. 12:**  Identify and explain any incentive or other bonus program offered to staff members, or other employees or agents, in the Chicago office(s) of UpRight, in regard to "sales" or other discussions/ correspondence with customers/clients, or potential customers/clients, and the "sources of funds" to pay such incentives or bonuses.

**ANSWER:**  UPRIGHT LAW objects to Interrogatory No. 12 on grounds that it is overly broad and unduly burdensome, and does not reasonably relate to the issues as set forth in the Court's January 5, 2017, Memorandum and Order.

**REQUEST NO. 11:**  Produce for inspection and copying a copy of any and all documentation related to formation, performance, sources and uses of funds for any incentive or bonus program of UpRight with its staff in Chicago, or with any Partner Attorney or other person.

**RESPONSE:**  UPRIGHT LAW objects to Request No. 11 on grounds that the Request is overly broad and unduly burdensome to the extent it requests documentation relating to "any incentive or bonus program" between UPRIGHT LAW and its "staff in Chicago," and does not reasonably relate to the issues as set forth in the Court's January 5, 2017 Memorandum and Order.  Subject to these objections, and its General Objections, UPRIGHT LAW will produce a copy of Grace Gardiner's Partnership Agreement and Amended Partnership Agreement, and a record of a payment made to Ms. Gardiner in 2016 as payout under the plan.

As explained by the Chapter 13 Trustee in her Amended Motion, she offered to limit the geographic range of these requests to persons who dealt with Tennessee cases and to limit the date range to the period since 2014.  [*Wright* Doc. 226, p. 14.]  UpRight Law, however, argues that information about the manner in which UpRight Law staff members have been compensated is not relevant.  UpRight Law also argues that the limitation proposed by the Chapter 13 Trustee is not helpful because it does not assign its non-attorney staff to regions and because UpRight Law first began operating in Tennessee in 2014.  [*Wright* Doc. 231, p. 19.]

The Court agrees with the Chapter 13 Trustee that the information requested is relevant to the § 504 issue.  UpRight Law reads the Issues Order too narrowly, losing sight of the central issue under § 504 – whether the *de facto* operations of UpRight Law, including its compensation

32

practices with non-attorney and attorney staff, as well as partner attorneys, make it more or less likely that UpRight Law partners like Grace Gardiner are "member[s], partner[s], or regular associate[s] in a professional association, corporation, or partnership" as contemplated by § 504.[15] For example, if UpRight Law shares compensation with non-attorney staff, such would be a direct violation of § 504 and the Tennessee Rules of Professional Conduct. *See In re Holmes*, 304 B.R. 292 (Bankr. N.D. Miss. 2004); Tenn. Sup. Ct. R. 8, RPC 5.4.

Thus, the Court finds that the Chapter 13 Trustee has met her initial burden of showing that the information requested is relevant. The burden then shifts to UpRight Law to show why the request is unduly burdensome or otherwise not discoverable. *See William Powell Co. v. Nat'l Indemnity Co.*, No. 1:14-cv-00807, 2017 WL 1326504, at *5 (S.D. Ohio Apr. 11, 2017). UpRight Law failed to meet its burden to explain why providing the information about incentive or bonus programs is unduly burdensome. The requests seek an explanation of any incentive program for staff members, including the source of funds for any such program, and a copy of any documentation relating to any incentive program for staff or partners. Nonetheless, the Court will limit the scope of the requests as follows: to the extent that any such bonus or incentive program exists, UpRight Law must amend its response to Initial Interrogatory Numbered 12 to provide the requested information for any such programs existing since January 1, 2015[16] and must amend its response to

---

[15] The Court also notes that the question of whether UpRight Law's compensation structure, including incentives paid to non-attorney staff, is relevant to whether such structure operates to incentivize violations of § 526.

[16] UpRight Law did not come to the hearing with information sufficient to meet its burden to show why requests for which the Chapter 13 Trustee agreed to reduce the scope to cases filed in Tennessee or to employees of UpRight Law who worked on such cases are unduly burdensome, choosing to rest on its boilerplate objections. In an effort to better understand UpRight Law's objections and to reach the fairest result possible, however, the Court directed UpRight Law to provide information concerning the number of cases filed in the Eastern District during various time frames. UpRight Law timely filed the requested statistics as follows:

    1. Number of cases filed between January 1, 2015, and June 30, 2017: 131 district-wide, 58 in the Knoxville division;
    2. Number of cases filed between August 1, 2015, and December 31, 2016: 81 district-wide, 41 in the Knoxville division;
    3. Number of Chapter 7 and Chapter 13 cases filed:
        A. from January 1, 2015, to June 30, 2017 (the first Eastern District of Tennessee case having been

33

Initial RFP 11 to provide the requested documentation, to the extent it exists, for any such programs

existing since January 1, 2015, for any attorney or non-attorney staff or partner attorneys who

worked on any case filed in the Eastern District of Tennessee.

       2.   *Initial Interrogatory Numbered 17 and Initial RFP 15*

       **INTERROGATORY NO. 17:**  List and identify any and all instances in which a conflict has been found to exist between the Partner Attorneys and Upright or any of its other Partner Attorneys.

       **ANSWER:**  UPRIGHT LAW objects to Interrogatory No. 17 to the extent that it seeks privileged information, and that it does not reasonably relate to the issues as set forth in the Court's January 5, 2017, Memorandum and Order. UPRIGHT LAW further states that no actual or potential conflicts have been alleged in these cases.

       **REQUEST NO. 15:**  Produce for inspection and copying a copy of any and all documents, software, schedules or other information used by UpRight, and the Partner Attorneys in investigating whether conflicts existed with customers/clients, or potential customers/clients, and other customers/clients of UpRight or any of its other Partner Attorneys, and in determining whether any such conflict existed.

       **AMENDED RESPONSE:**  UPRIGHT LAW objects to Request No. 15 on grounds that it does not reasonably relate to the issues as set forth in the Court's January 5, 2017, Memorandum and Order.  Subject to these objections, and its General Objections, UPRIGHT LAW will produce a copy of its Conflicts Check Policy.

UpRight Law provided to the Chapter 13 Trustee a copy of its conflicts check policy dated

March 1, 2017, and scripts and checklists for "Associate Attorneys" that contain conflict check

procedures, as well as a narrative description of its policy in response to Initial Interrogatory

Numbered 16. [*Wright* Doc. 231, p. 19.]  UpRight Law explained in its response to the Amended

Motion that it does not possess the ability to conduct a search for whether conflicts existed in its

---

                        filed February 3, 2015):
                        i.  Chapter 7: 118 cases district-wide, 53 cases in the Knoxville division
                        ii. Chapter 13: 13 cases district-wide, 5 cases in the Knoxville division
                B.  from August 1, 2015, to December 30, 2016:
                        i.  Chapter 7: 69 cases district-wide, 36 cases in the Knoxville division
                        ii. Chapter 13: 12 cases district-wide, 5 cases in the Knoxville division

[*Wright* Doc. 244.]

cases because it does not store the results of its conflicts checks. [*Wright* Doc. 231, p. 20.]  Thus, UpRight Law asserts, it would be required to go back to each case and duplicate original conflicts checks to provide the information sought by the Chapter 13 Trustee.  [*Id.*]

The Court finds that the information about UpRight Law's conflicts checks policies and procedures is relevant because a failure to conduct appropriate conflicts checks would be a violation of the Tennessee Rules of Professional Conduct (*see* Tenn, Sup. Ct. R. 8, RPC 1.7, 1.8, 1.10), which likely would impact the issue of whether UpRight Law partners like Grace Gardiner are "member[s], partner[s], or regular associate[s] in a professional association, corporation, or partnership" as contemplated by § 504.  Notably, the (boilerplate) objections stated by UpRight Law in its responses and Amended Responses to the discovery requests do not include an objection that the requests are unduly burdensome, that argument only having been raised in UpRight Law's brief in response to the Amended Motion.

Nonetheless, the Court finds that the information sought by the request is privileged to the extent that it seeks information about the clients of UpRight Law and/or its local partners and that requiring UpRight Law to review all files for actual or potential clients to report whether any conflict was found to exist would be unduly burdensome.[17]  Thus, the Court denies the Chapter 13 Trustee's request to compel additional information in response to Initial Interrogatory Numbered 17.

Regarding Initial RFP 15, counsel for UpRight Law informed the Court at the June 29 hearing that he understood that no written conflicts check policy existed before March 1, 2017.  If that statement is accurate, then UpRight Law shall amend its response to Initial RFP 15 to make clear that the policy produced, dated March 1, 2017, is the first such policy in existence.  If a

---

[17] As noted at the June 29 hearing, the Court agrees that depositions of UpRight Law managers may include the topic of UpRight Law's inability to say whether any conflicts were found to have existed absent a duplication of the original conflicts check for each client or potential client.

35

conflicts check policy existed before March 1, 2017, UpRight Law shall produce any and all

versions of any such policy.

    3.      *Initial Interrogatory Numbered 23 and Initial RFP 20*

        **INTERROGATORY NO. 23:**  Identify and explain any and all litigation of any kind (including but not limited to disciplinary complaints and/or proceedings) and in any jurisdiction in the United States of America involving UpRight (or any other name by which Law Solutions Chicago LLC does business in any jurisdiction, or any related entity), regarding the practices, procedures, model, or other issue [*sic*] similar to those raised in this matter, including but not limited to methods of payment of fees through third parties (such as Sperro), compensation through the "no-look fees" under 11 U.S.C. §504 and related provisions, 11 U.S.C. § 526, and any allegations of unauthorized practice of law in the particular jurisdiction.

        **AMENDED ANSWER:**  UPRIGHT LAW objects to Interrogatory No. 23 on grounds that it is overly broad and unduly burdensome, is not proportional to the needs of the case, and does not reasonably relate to the issues as set forth in the Court's January 5, 2017, Memorandum and Order.  UPRIGHT LAW further objects to this Interrogatory to the extent that it seeks information that is equally available to the Trustee.  Subject to these objections, and its General Objections, UPRIGHT LAW states that three bankruptcy courts have ruled on the issue of whether UpRight Law constitutes a "partnership, corporation, or professional association under 11 U.S.C. § 504. . . .

        UPRIGHT LAW further states that after conducting a reasonable search, it is providing information about cases in which it has disgorged fees in response to a formal motion filed by the United States Trustee Program since 2014.  Those matters are attached as Exhibit A.  For the sake of context, UPRIGHT LAW has filed more than 13,000 bankruptcy cases during that timeframe.

        **REQUEST NO. 20:**  Produce for inspection and copying a copy of any pleadings filed in any and all litigation of any kind (including but not limited to disciplinary complaints and/or proceedings) and in any jurisdiction in the United States of America involving UpRight (or any other name by which Law Solutions Chicago LLC or any related entity does business in any jurisdiction), regarding the practices, procedures, model, or other issue [*sic*] similar to those raised in this matter, including but not limited to methods of payment of fees through third parties (such as Sperro), compensation through the "no-look fees" under 11 U.S.C. § 504 and related provisions, 11 U.S.C. §526, and any allegations of unauthorized practice of law in the particular jurisdiction.

        **AMENDED RESPONSE:**  UPRIGHT LAW objects to Request No. 20 on grounds that it is overly broad and unduly burdensome, and is not relevant or proportional to the needs of the case.  Subject to these objections, and its General

Objections, after conducting a reasonable search, UPRIGHT LAW will produce copies of orders in which it had been ordered to disgorge fees since 2014. UPRIGHT LAW will produce the opinion in *In Re Todarello*, 2016 WL 4508188 (N. D. Ohio August 26, 2016) and a recording of the proceedings from the Southern District of Mississippi in *In Re Herrington*, 15-52068 and *In re Baker*, 16-50257.

The Chapter 13 Trustee argues that UpRight Law agreed to provide information only about cases favorable to UpRight Law on § 504 issues or cases in which the United States Trustee Program sought disgorgement by formal motion since 2014.  [*Wright* Doc. 226, p. 15.] The Trustee agreed to limit the temporal scope of the request to January 2014 to the present and to limit the burden on UpRight Law by seeking only case numbers, parties' names, and courts/jurisdictions of cases responsive to the requests so that she can then obtain the desired pleadings from PACER. [*Wright* Doc. 226, p. 16.]  UpRight Law denies that it "cherry-picked" cases to identify and explains that no other cases exist in which a court has ruled on a § 504 issue or a claim of unauthorized practice of law. [*Wright* Doc. 231, p. 21.]  UpRight Law further argues that the identity of cases in which an allegation under § 504 or of unauthorized practice has been made against UpRight Law is irrelevant.  [*Id.*]

The Court disagrees with UpRight Law about the relevance of such information; however, the parties agreed at the June 29 hearing that UpRight Law would provide to the Chapter 13 Trustee the information she seeks (case numbers, parties' names, and jurisdiction from January 2014 to the current date).[18]

   4.   *Initial RFP 3*

   **REQUEST NO. 3:**  Produce for inspection and copying tax returns, statements, schedules and/or informational tax filings submitted by you to the Internal Revenue Service and/or the Tennessee Department of Revenue for the past five (5) years.

   **RESPONSE:**  UPRIGHT LAW objects to this request on the grounds that it seeks the confidential tax returns of UPRIGHT LAW.  *See Shelbyville Hosp.*

---

[18] The Court understands that UpRight Law agreed that the items resolved at the June 29 hearing would be amended or supplemented on or before July 21, 2017.

*Corp. v. Mosley*, 2017 WL 1155046 at *4 (E.D. Tenn. Mar. 27, 2017); *citing Terwilliger v. York Int'l Corp.*, 176 F.R.D. 214, 216 (W.D. Va. 1997) ("[J]udicial consensus exists that, as a matter of policy, great caution should be exercised in ordering the disclosure of tax returns. Unnecessary disclosure of tax returns is to be avoided."). UPRIGHT LAW further objects to this request on the grounds that it is overly broad and not proportional to the needs of this case taking into account the limited nature of the relief the Court is permitted to impose in connection with the Relevant Proceedings. *See In re John Richards Homes Bldg. Co., L.L.C.*, 552 Fed. App'x 401 (6th Cir. 2013) (any sanctions imposed by bankruptcy court must be mild and prospective in nature, rather than punitive); *In re Downs*, 103 F. 3d 472, 478 (6th Cir. 1996) ("The sanction levied must…be commensurate with the egregiousness of the conduct."). Subject to those objections, and its General Objections, UPRIGHT LAW will produce redacted and excerpted versions of its Federal and Tennessee tax returns for the years 2015 and 2016.

The Chapter 13 Trustee offered to limit the temporal scope of the request to 2014 to the present. [*Wright* Doc. 226, p. 16.] She notes that the confidentiality issue should be resolved by the Amended Protective Order entered May 30, 2017 [*Wright* Doc. 210]. She also notes that the redacted returns produced by UpRight Law are so heavily redacted that they provide virtually no information whatsoever – essentially they only show what forms were used by UpRight Law. [*Wright* Doc. 226, p. 17.]

UpRight Law responds that it provided an unredacted Schedules K-1 for Attorney Gardiner and that the Chapter 13 Trustee obtained the Schedule K-1 for former Tennessee UpRight Law partner Layne Gillespie. UpRight Law argues that its production should have satisfied the Chapter 13 Trustee's desire for the information about how UpRight Law reports to taxing authorities its income and the sharing of fees with partner attorneys, the type of entity that the LLC and partnerships are characterized to be, and corporate structure and income distribution for § 504 issues. UpRight Law also argues that the Chapter 13 Trustee has made no showing that the additional tax return information is needed for any allowable purpose.

In *Shelbyville Hospital Corp. v. Mosley*, No. 4:13-CV-88, 2017 WL 1155046, at *3 (E.D. Tenn. Mar. 27, 2017) (cited by UpRight Law in its objection to Initial RFP 3 [*Wright* Doc. 219-1,

p. 22]), the district court was asked to *reopen* discovery after the party seeking tax returns had

obtained summary judgment against the defendant and had withdrawn its request for the tax

returns, indicating that such were relevant only to the liability issue that had been determined by the

court.  The court found that the heightened standard for discovery of tax returns was important

given the reversal by the plaintiff on the question of relevance of the returns.  The two-part test[19] to

determine whether the discovery of returns is permissible requires the party seeking the returns to

show that they are relevant and contain information not obtainable from other sources.  *Id.* at *4

(citing *Smith v. Mpire Holdings, LLC*, No. 3:08-0549, 2010 WL 711797, at *1 (M.D. Tenn. Feb.

22, 2010); *Burket v. Hyman Lippitt, P.C.*, Nos. 05-CV-72110, 05-CV-72171, 05-CV-072221, 2007

WL 2214302, at *2 (E.D. Mich. July 27, 2007)).  Here, the Chapter 13 Trustee has shown that the

unredacted returns are relevant because the income distribution to partners impacts the issue of

whether UpRight Law partners like Grace Gardiner are "member[s], partner[s], or regular

associate[s] in a professional association, corporation, or partnership" as contemplated by § 504.

The Court finding the tax returns relevant, there appears to be no real question but that the

return information sought by the Chapter 13 Trustee is not obtainable from other sources.

Moreover, the Amended Protective Order ensures that the confidentiality of the returns will be

maintained.  Accordingly, UpRight Law will be required to amend its response to Initial RFP 3 to

provide the unredacted returns from 2014 forward.

5.    *Initial RFP 4*

**REQUEST NO. 4:**  To the extent you have not already done so in response
to these Requests, produce for inspection and copying all documents of any kind
concerning or relating to the Debtors in the Relevant Proceedings, or in any Other
E.D. TN Cases, including but not limited to audio recordings, intake records, e-
mails or other communications, activity logs, credit reports, drafts of Petitions,
Statements, Schedules and other proposed filings, communications with Partner

---

[19] The *Mosley* court noted that "[t]he Sixth Circuit has never expressly adopted this two-part test, but it has, arguably, in
one of its older opinions implicitly endorsed it."  *Mosley*, 2017 WL 1155046, at *4 (citing *United Motion Theatre Co. v.
Ealand*, 199 F.2d 371, 371 (6th Cir. 1952)).

Attorneys, bookkeeping and account records, bank statements, cancelled checks, receipts, invoices, payment records, deposit tickets, loan documents, electronic records, digital documents, computer files (including photographs), magnetic tapes, floppy disks, compact disks, thumb drives, or other materials or media containing data, information, or files.

**RESPONSE:** UPRIGHT LAW objects to Request No. 4 on grounds that it is overly broad and unduly burdensome, vague and ambiguous, calls for information protected by the attorney-client privilege and attorney work product doctrine, and does not reasonably relate to the issues as set forth in the Court's January 5, 2017, Memorandum and Order to the extent that it seeks documents relating to "any Other E.D. TN Cases." UPRIGHT LAW further objects to this Interrogatory to the extent that it purports to seek information relating to UPRIGHT LAW's defense of the Motions for Sanctions. Subject to these objections, and its General Objections, UPRIGHT LAW will produce relevant documents in its possession relating to Ms. Haynes, Ms. Hagstrom, and Ms. Wright, including payment records, Salesforce records, email communications, phone logs, bankruptcy pleadings, materials received from the Debtors, and, upon the entry of a protective order by the Court, audio recordings of its telephone calls with Ms. Haynes, Ms. Hagstrom, and Ms. Wright.

The Chapter 13 Trustee proposed to limit the date range for this request to 2014 to the present. [*Wright* Doc. 226, p. 18.] She also acknowledged the appropriateness of redaction of documents reflecting personally identifiable information for debtors who have not yet waived the attorney-client privilege. [*Id.*] UpRight Law objects to the Chapter 13 Trustee's request for production from 131 cases, which would require UpRight Law to locate and review case files for over 100 cases, and would include conducting a privilege review for each file and logging the results because each file contains information protected by the attorney-client privilege, the work product doctrine, and the rule of confidentiality. [*Wright* Doc. 231, p. 25.]

At the hearing on June 29, the Chapter 13 Trustee agreed to limit the scope of the request to clients' names and case numbers for the 131 cases filed by UpRight Law attorneys in the Eastern District of Tennessee. The Trustee also agreed to limit the request for retainer agreements to clients who sought representation from August 2015 to December 2016 but emphasized her need to

receive retainer agreements for clients who executed a retainer agreement, regardless of whether a case was actually filed.

Counsel for UpRight Law acknowledged that it would be reasonable for UpRight Law to provide the client names and case numbers for the Eastern District of Tennessee cases but was concerned about providing so many retainer agreements and also with those clients' attorney-client privilege should the Chapter 13 Trustee seek to talk with them. Counsel for the Chapter 13 Trustee indicated that the trustee could seek a waiver of the privilege from those clients. In response, counsel for UpRight Law raised concerns about the Chapter 13 Trustee's communications with represented persons.

Rule 4.2 provides that "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." Tenn. Sup. Ct. R. 8, RPC 4.2. The first comment to Rule 4.2 says that the Rule "contributes to the proper functioning of the legal system by protecting a person who has chosen to be represented by a lawyer in a matter against possible overreaching by other lawyers who are participating in the matter, interference by those lawyers with the client-lawyer relationship, and the uncounseled disclosure of information relating to the representation." The Court does not agree that the Chapter 13 Trustee's communications with clients represented by UpRight Law attorneys for purposes of their bankruptcy cases would fall within Rule 4.2's prohibition. The "matter to which the communication relates" is UpRight Law's manner of marketing to and solicitation of the clients, as well as the fee arrangements with those clients, not the substance of the clients' bankruptcy filings.

UpRight Law also argues that the retainer agreements of clients who did not file a bankruptcy case should be protected by attorney-client privilege. To the contrary,

[t]he attorney-client privilege does not protect "the fact of legal consultation or employment, clients' identities, attorney's fees, and the scope and nature of the employment." *Humphreys, Hutcheson & Moseley v. Donovan*, 755 F.2d 1211, 1218 (6th Cir. 1985); *In re Grand Jury Subpoena*, 204 F.3d 516, 520 (4th Cir. 2000) ("The identity of the client, the amount of the fee, the identification of payment by case name, and the general purpose of the work performed are usually not protected by the attorney-client privilege because such information ordinarily reveals no confidential professional communications between attorney and client") (internal citations omitted); *Leach v. Quality Health Services*, 162 F.R.D. 499, 501-02 (E.D. Pa. 1995) (the attorney's name, the client's name, the general matter being worked on, and the date and time of services rendered are unprotected, but a description of the actual legal services performed is.).

*Trollinger v. Tyson Foods, Inc.*, No. 4:02-CV-23, 2007 WL 951869, at *2 (E.D. Tenn. Mar. 28, 2007). Simply, retainer agreements are not privileged. *See United States v. Skeddle*, 989 F. Supp. 890, 904 (N.D. Ohio 1997).

The Court finds that the information sought by the Chapter 13 Trustee (clients' names and case numbers from January 2014 forward and retainer agreements for clients (whether or not a case was filed) from August 2015 through December 2016) is relevant to the Court's determination of the § 504 issue as expressly stated at paragraph II.A.1.ii. of the Issues Order. The Court also finds that UpRight Law has not met its burden to show that the restricted scope offered by the Chapter 13 Trustee still creates an unduly burdensome task for UpRight Law or that attorney-client privilege bars production of the information. Accordingly, UpRight Law must supplement its response to Initial RFP 4 by providing the names and case numbers for cases filed in the Eastern District of Tennessee from January 2014 forward and retainer agreements with each client (regardless of case filing) for the time period August 1, 2015, to December 31, 2016.

6.    *Initial RFP 5*

**REQUEST NO. 5:** Produce for inspection and copying a copy of the Operating Agreement of Law Solutions Chicago, LLC, or any other such documents reflecting corporate formation, governance, membership and existence of the entity known as Law Solutions Chicago, LLC d/b/a Upright Law (or any other name by which Law Solutions Chicago LLC does business in any jurisdiction).

42

**AMENDED RESPONSE:** UPRIGHT LAW objects to Request No. 5 on grounds that it is vague and ambiguous, overly broad and unduly burdensome, calls for information protected by the attorney-client privilege and attorney work product doctrine, and that it requests confidential information in the absence of an appropriate protective order. Subject to these objections, and its General Objections, UPRIGHT LAW states that it will produce records of its corporate formation filed with the Illinois Secretary of State and Tennessee Secretary of State, and a copy of its Operating Agreement in effect throughout the time period encompassed by the relevant matters. Further answering, UPRIGHT LAW will produce non-privileged portions of newsletters and PowerPoint presentations from its Partner meetings during the relevant time period in these cases.

The Chapter 13 Trustee argues that she seeks documents reflecting activity at the LLC level involving the LLC itself because it is the LLC that is purported to be the firm for purposes of § 504. Specifically, because the local partners do not appear to be members of the LLC, the Chapter 13 Trustee seeks additional information about the operation of the LLC relevant to the question of whether UpRight Law partners like Grace Gardiner are "member[s], partner[s], or regular associate[s] in a professional association, corporation, or partnership" as contemplated by § 504. UpRight Law argues in response[20] that the Chapter 13 Trustee has not explained how minutes of the LLC member meetings are relevant to the § 504 analysis and that Illinois law (where UpRight Law is organized) does not require LLCs to maintain meeting minutes.

The Court agrees with the Chapter 13 Trustee that documents reflecting "corporate formation, governance, membership and existence of" the LLC are relevant to the § 504 issue before the Court. The burden shifts to UpRight Law to establish that the request is unduly burdensome or otherwise not discoverable. UpRight Law has failed to explain how producing the documents (if they exist) would be unduly burdensome. Further, the issue of privilege or work-product protection was not addressed at all in UpRight Law's written response to the Amended

---

[20] UpRight Law's written response to the Amended Motion raised an argument about the syntax of the Chapter 13 Trustee's request [*Wright* Doc. 231, p. 27], but UpRight Law counsel abandoned that argument at the June 29 hearing.

43

Motion, and as already discussed, the privilege logs are insufficient to preserve any objection to

production because of an asserted privilege.

Accordingly, UpRight Law must produce documents requested in RFP 5.

7.    *Initial RFP 6*

**REQUEST NO. 6:** Produce for inspection and copying a copy of any and all intake documents produced or used by UpRight, or any Partner Attorney or other person, in regard to the Relevant Proceedings, or in any Other E.D. TN Cases.

**RESPONSE:** UPRIGHT LAW objects to Request No. 6 on grounds that it is overly broad and unduly burdensome, vague and ambiguous, calls for information protected by the attorney-client privilege and attorney work product doctrine, and does not reasonably relate to the issues as set forth in the Court's January 5, 2017, Memorandum and Order, with regard to its request for documents "produced or used ... in any Other E.D. TN Cases."  Subject to these objections, and its General Objections, UPRIGHT LAW will produce responsive documents relating to Ms. Haynes, Ms. Hagstrom, and Ms. Wright, including its Salesforce records, Grace Gardiner's time records and case notes, and, upon the entry of a protective order by the Court, audio recordings of its telephone calls with Ms. Haynes, Ms. Hagstrom, and Ms. Wright.

UpRight Law argues that it produced voluminous documents relating to intake of the

debtors in the captioned cases (and the *Holman* case), as well as documents concerning the general

intake process, and that UpRight Law's production is sufficient to demonstrate UpRight Law's *de*

*facto* practices for client intake.  UpRight Law also argues that the burden of producing the

information for the 131 cases is too great.  Finally, UpRight Law argues that the information sought

about other clients in the Eastern District of Tennessee is protected from disclosure by the attorney-

client privilege.  Notably, UpRight Law has lodged this objection as a general objection without

providing any privilege logs under Rule 26(b)(5)(A).

First, the Court rejects UpRight Law's claim of privilege on behalf of its clients, because

"[w]hen information is disclosed for the purpose of assembly into a bankruptcy petition and

supporting schedules, there is no intent for the information to be held in confidence because the

information is to be disclosed on documents publicly filed with the bankruptcy court." *United*

44

*States v. White*, 950 F.2d 426, 429 (7th Cir. 1991); *see also United States v. White*, 944 F. Supp. 2d

454, 457-58 (D.S.C. 2013); *United States v. Naegele*, 468 F. Supp. 2d 165, 169-70 (D.D.C. 2007).

Given the import of the information sought by the Chapter 13 Trustee and UpRight Law's

general claim throughout these proceedings that the manner in which the captioned cases was

handled was an anomaly, the Court also rejects UpRight Law's argument that it has provided

sufficient information.  Thus, the Court must determine whether the scope of the request should be

reduced to lower the burden on UpRight Law.  Notwithstanding that UpRight Law failed to meet

its burden to show the expense of providing the requested documents sought by Initial RFP 6 (*i.e.*,

UpRight Law provided no sworn statement from any person about the effort or expense that would

be required to produce the documents for all of the 131 cases filed in the Eastern District), the

Court will impose an *initial* limitation on the scope of the request as follows.  The Chapter 13

Trustee's Initial Interrogatories and Initial RFP defined "Other E.D. TN cases" as including,

without limitation, eight specifically identified cases (the "Eight Cases").  [*Wright* Doc. 199-1, p.

5.]  At the June 29 hearing, the Chapter 13 Trustee agreed to limit the scope of Initial RFPs 7 and 8

to those Eight Cases.  The Court will limit the scope of Initial RFP 6 to those same Eight Cases.  If,

after receiving UpRight Law's production concerning those Eight Cases, the Chapter 13 Trustee

desires information for additional cases, the Chapter 13 Trustee may ask the Court to expand the

scope of Initial RFP 6.

Accordingly, UpRight Law is required to amend its response to Initial RFP 6 to provide

responsive documents for the Eight Cases.

8.     *Initial RFP 7*

**REQUEST NO. 7:** Produce for inspection and copying a copy of any and
all e-mail correspondence by Upright, or any Partner Attorney or other person, in
regard to the Relevant Proceedings, or in any Other E.D. TN Cases.

45

**RESPONSE:** UPRIGHT LAW objects to Request No. 7 on grounds that it is overly broad and unduly burdensome, vague and ambiguous, calls for information protected by the attorney-client privilege and attorney work product doctrine, and does not reasonably relate to the issues as set forth in the Court's January 5, 2017, Memorandum and Order, with regard to its request for documents relating to "any Other E.D. TN Cases." Subject to these objections, and its General Objections, UPRIGHT LAW will produce copies of its e-mail communications with Ms. Haynes, Ms. Hagstrom, and Ms. Wright.

For the same reasons given for granting the Amended Motion concerning Initial RFP 6, as limited in scope herein, the Court compels UpRight Law to provide responsive documents to Initial RFP 7 for the Eight Cases. Regarding the claim of privilege by UpRight Law, the Court is unable to determine the applicability of those clients' attorney-client privilege for two reasons. First, the Court understood from the June 29 hearing that the Chapter 13 Trustee has obtained waivers from the debtors in most or all of those Eight Cases. Second, UpRight Law has not provided privilege logs under Rule 26(b)(5). If the Chapter 13 Trustee indeed has obtained waivers from the debtors in the Eight Cases, then privilege should not be an issue. Because the privilege can be waived only by the client and because UpRight Law has sufficiently explained to the Court under Rule 26(b)(5)(A) why the privilege applies to the information sought under this discovery request, the failure to provide a privilege log is not construed as a waiver or as a ground to overrule the objection on the ground of attorney-client privilege. Thus, to the extent that the trustee has not obtained waivers or to the extent that UpRight Law asserts the debtor-client's privilege for emails responsive to Initial RFP 7, UpRight Law must provide a privilege log that complies with Rule 26(b)(5)(A) and must confer with the Chapter 13 Trustee to determine whether an agreement can be reached concerning those emails. If no agreement can be reached, then UpRight Law is required to move for a protective order under Rule 26(c)(1) in order to ask the Court to answer the question.

Accordingly, UpRight Law must amend its response to Initial RFP 7 to provide responsive documents for the Eight Cases for which privilege has been waived by the debtor-clients or, as to

any in which a wavier has not been obtained, produce a privilege log and, barring agreement,

request a protective order under Rule 26(c)(1).

9.  *Initial RFP 8*

**REQUEST NO. 8:** Produce for inspection and copying a copy of any and all payment records of UpRight, or any Partner Attorney or other person, in regard to the Relevant Proceedings, or in any Other E.D. TN Cases, including but not limited to payments by Debtors to Up Right or the Partner Attorneys, or by UpRight to the Partner Attorneys.

**RESPONSE:** UPRIGHT LAW objects to Request No. 8 on grounds that it is overly broad and unduly burdensome, and does not reasonably relate to the issues as set forth in the Court's January 5, 2017, Memorandum and Order, with regard to its request for documents "in any Other E.D. TN Cases." Subject to these objections, and its General Objections, UPRIGHT LAW states that Grace Gardiner did not receive any fees in connection with her representation of Ms. Haynes, Ms. Hagstrom, and/or Ms. Wright, and Grace Gardiner did not personally charge these Debtors.  UPRIGHT LAW will produce copies of the Payment Ledgers for each of these Debtors.

At the June 29 hearing, the Chapter 13 Trustee and UpRight Law agreed that UpRight Law

would provide responsive documents in the Eight Cases.  Accordingly, the Amended Motion is

granted to the extent of the agreement.

10.  *Initial RFP 9*

**REQUEST NO. 9:** Produce for inspection and copying a copy of any and all Partnership Agreements of UpRight with any Partner Attorney or other person, in regard to the Relevant Proceedings, or in any Other E.D. TN Cases.

**RESPONSE:** UPRIGHT LAW objects to Request No. 9 on grounds that it is overly broad and unduly burdensome, and does not reasonably relate to the issues as set forth in the Court's January 5, 2017, Memorandum and Order, with regard to its request for documents "in any Other E.D. TN Cases." Subject to these objections, and its General Objections, UPRIGHT LAW will produce Grace Gardiner's Partnership Agreement and Amended Partnership Agreement with UPRIGHT LAW.

UpRight Law agreed in its response to the Amended Motion [*Wright* Doc. 231] to provide

the remaining partnership agreements sought by Initial RFP 9 – specifically, for all Partner

Attorneys involved in any of the 131 cases filed in the Eastern District of Tennessee.  At the June

47

29 hearing, however, the Chapter 13 Trustee agreed to reduce the scope of the request to the

partnership agreements for the attorneys in the Eight Cases.  Accordingly, the Amended Motion is

granted as to Initial RFP 9, and UpRight Law must provide partnership agreements with the local

attorneys who filed the Eight Cases.

11.     *Initial RFP 10*

**REQUEST NO. 10:** Produce for inspection and copying a copy of any and all Retainer Agreements of UpRight with any client/customer and with any Partner Attorney or other person, in regard to the Relevant Proceedings, or in any Other E.D. TN Cases.

**RESPONSE:** UPRIGHT LAW objects to Request No. 10 on grounds that it is overly broad and unduly burdensome, and does not reasonably relate to the issues as set forth in the Court's January 5, 2017, Memorandum and Order, with regard to its request for documents "in any Other E.D. TN Cases." Subject to these objections, and its General Objections, UPRIGHT LAW will produce its Chapter 7 and Chapter 13 Retainer Agreements with Ms. Haynes, Ms. Hagstrom, and Ms. Wright.

At the June 29 hearing, the Chapter 13 Trustee and UpRight Law agreed that UpRight Law

would provide retainer agreements in the Eight Cases identified by the trustee in her definitions.

Accordingly, the Amended Motion is granted to the extent of the agreement.

12.     *Initial RFP 14*

**REQUEST NO. 14:** Produce for inspection and copying a copy of any and all documents, software, schedules or other information used by staff members in the Chicago office(s) of UpRight in assigning customers/clients, or potential customers/clients to a particular Partner Attorney in their jurisdiction.

**RESPONSE:** UPRIGHT LAW objects to Request No. 14 on grounds that it does not reasonably relate to the issues as set forth in the Court's January 5, 2017, Memorandum and Order.

At the June 29 hearing, UpRight Law agreed to provide documents reflecting how local

attorneys were selected to handle cases that were to be filed in the Eastern District of Tennessee.

Accordingly, the Amended Motion is granted to the extent of the agreement.

13.     *Initial RFP 16*

**REQUEST NO. 16:** Produce for inspection and copying a copy of any and all documents, correspondence, or other information used by UpRight, by which Partner Attorneys were identified, selected, vetted, interviewed, and any other actions taken which resulted in a Partnership Agreement being entered into by the Partner Attorneys with UpRight.

**RESPONSE:** UPRIGHT LAW objects to Request No. 16 on grounds that it is overly broad and unduly burdensome, and not proportional to the matter at issue in that it seeks all documents "by which Partner Attorneys were identified, selected, vetted, interviewed, and any other actions taken which resulted in a Partnership Agreement" without specifying a date range or limiting its request to Grace Gardiner. Subject to these objections, and its General Objections, UPRIGHT LAW will produce documents reflecting the manner in which attorneys enter into a Partnership Agreement with UPRIGHT LAW.

The parties agreed at the June 29 hearing that UpRight Law would provide documents responsive to Initial RFP 16 for the Tennessee attorneys identified in UpRight Law's response to Initial Interrogatory numbered 9 (the "Tennessee Attorneys"), to the extent that such documents exist concerning the initiation of the relationship between UpRight Law and the Tennessee Attorneys. Accordingly, the Amended Motion is granted to the extent of the agreement.

14.     *Initial RFP 17*

**REQUEST NO. 17:** Produce for inspection and copying a copy of any and all documents, correspondence, or other information used or produced by UpRight, by which fees were paid and taxes reported as between the Partner Attorneys and UpRight.

**AMENDED RESPONSE:** UPRIGHT LAW objects to Request No. 17 on grounds that it is overly broad and unduly burdensome, and does not reasonably relate to the issues as set forth in the Court's January 5, 2017, Memorandum and Order. Further responding, UPRIGHT LAW objects to this request to the extent it seeks the confidential tax returns of UPRIGHT LAW, and otherwise seeks confidential information. *See Shelbyville Hosp. Corp. v. Mosley*, 2017 WL 1155046 at *4 (E.D. Tenn. Mar. 27, 2017); *citing Terwilliger v. York Int'/ Corp.*, 176 F.R.D. 214, 216 (W.D. Va. 1997) ("[J]udicial consensus exists that, as a matter of policy, great caution should be exercised in ordering the disclosure of tax returns. Unnecessary disclosure of tax returns is to be avoided."). Subject to these objections, and its General Objections, UPRIGHT LAW will produce unredacted copies of the 2015 and 2016 Schedules K-1 for Grace Gardiner, designated as

"Confidential". Further stating, Grace Gardiner received no distributions for the Wright, Hagstrom, or Haynes representations.

UpRight Law argues that this request is irrelevant because it matters not how the firm distributes profits among its "partner attorneys." To the contrary, UpRight Law's relationship with its "partner attorneys" is central to the ultimate question before this Court – whether UpRight Law has violated § 504 by sharing compensation without disclosure. How profits are distributed among attorneys affiliated with UpRight Law is critical to the question of whether the local attorneys are "member[s], partner[s], or regular associate[s] in a professional association, corporation, or partnership." 11 U.S.C. § 504(b).

At the June 29 hearing, the Chapter 13 Trustee again agreed to reduce the scope of this request to the Tennessee Attorneys. With that reduction in scope, UpRight Law was willing to provide documents (other than those already provided) that explain *how* any funds are divided among the Tennessee attorneys, but UpRight Law maintained its objection to providing information about the actual distributions (*i.e., dollar amounts)* to the Tennessee Attorneys. To the extent that a document exists to explain how "profits" are shared among the Tennessee Attorneys, UpRight Law must provide it to the Chapter 13 Trustee. If no such document exists, then UpRight Law must provide documents reflecting the percentages paid to the Tennessee Attorneys. If no document exists reflecting percentages paid, then UpRight Law must provide documents that reflect the actual amounts paid to the Tennessee Attorneys.

15.    *Initial RFP 18*

**REQUEST NO. 18:** Produce for inspection and copying a copy of any and all documents, correspondence, or other information used or produced by UpRight by which UpRight gave instruction or guidance to and/or monitored compliance of Partner Attorneys with the requirements of the Partnership Agreement, and/or in regard to performance of services for the client/customer, interaction with the Chapter, 13 Trustee, creditors and other parties in interest, and adherence to the rules, procedures, and statutes of the Bankruptcy Code in matters before the Bankruptcy Court, in the Relevant Proceedings, or in any Other E.D. TN Cases.

**AMENDED RESPONSE:** UPRIGHT LAW objects to Request No. 18 because it calls for information protected by the attorney-client privilege, the attorney work product doctrine, and as overly broad and unduly burdensome to the extent that it purports to seek information relating to matters outside of the Relevant Proceedings. Subject to those objections, and its General Objections, UPRIGHT LAW states that it is producing its Partnership Agreement with Grace Gardiner, and samples of case notices that go to notices@uprightlaw.com, for monitoring by a staff attorney. UPRIGHT LAW will also produce non-privileged portions of Power Point Slides from partner meetings and non-privileged portions of Tennessee partner meeting minutes. UPRIGHT LAW also will produce a privilege log.

Although the central issues for this request are UpRight Law's claims of attorney-client privilege and application of the work-product doctrine, UpRight Law also argues that the trustee's request for documents other than those already provided (with redactions) is overly broad and unduly burdensome.  The Court disagrees that the request is overly broad because the manner of oversight by UpRight Law of its "partner attorneys" is central to the question of whether those attorneys are "member[s], partner[s], or regular associate[s] in a professional association, corporation, or partnership" as contemplated by § 504.

Regarding the burdensomeness of the request, UpRight Law failed to provide any support for its argument that it would be unduly burdensome to provide additional documents; however, the Court will limit Initial RFP 18 to the Tennessee Attorneys.

Regarding the privilege issues, the Chapter 13 Trustee opposes the redaction of information that constitutes mere facts addressed in partnership meetings.  For the reasons set forth *supra*, the Court overrules the objection of UpRight Law to production of documents requested by Initial RFP 18.

16.    *Initial RFP 21*

**REQUEST NO. 21:**  Produce for inspection and copying a copy of any letterhead, signage or other published information by which the Partner Attorneys hold or have ever held themselves out as being a partner in UpRight, or that the local office of such Partner Attorney is (or was) an office of UpRight.

**RESPONSE:** UPRIGHT LAW objects to Request No. 21 on grounds that it is overly broad and unduly burdensome, is not proportional to the needs of the case, because it requests "any letterhead, signage or other published information by which the Partner Attorneys hold or have ever held themselves out as being a partner in UpRight[,]" without specifying a date range or geographic range. Subject to these objections, and its General Objections, UPRIGHT LAW will produce documents reflecting Grace Gardiner's business card, letterhead, and a screenshot of an archived copy of the www.uprightlaw.com website showing Grace Gardner as a Partner. Further answering, UPRIGHT LAW refers the Trustee to www.uprightlaw.com for a list of UPRIGHT LAW's current Partners.

The parties agreed at the June 29 hearing that UpRight Law would provide documents responsive to Initial RFP 21 for the Tennessee Attorneys, to the extent that responsive documents exist as to any time period during which the Tennessee Attorneys were affiliated with UpRight Law (and UpRight Law will request such documents from the Tennessee Attorneys). Accordingly, the Amended Motion is granted to the extent of the agreement.

17.    *Initial RFP 23*

**REQUEST NO. 23:**  Produce for inspection and copying a copy of any and all records of the disposition of and accounting for fees for any Chapter 13 clients (or potential Chapter 13 clients) of UpRight in the Eastern District of Tennessee, Northern Division, who had retained or subsequently retained or contacted UpRight but for whom no Chapter 13 bankruptcy case has been filed by UpRight) at the time of or at any time after the Bankruptcy Court entered its Order entered August 18, 2016 [Doc. 86] in the Clara Wright case, whereby UpRight Law LLC and any partner thereof was precluded from filing any Chapter 13 bankruptcy case providing for the payment of the Presumptive Fee provided by E.D. Tenn. LBR 2016-l(a) and could only file cases that provide for payment of the Lodestar Fee as provided by E.D. Tenn. LBR 2016-l(b), (the "Lodestar Order").

**RESPONSE:** UPRIGHT LAW objects to Request No. 23 on grounds that it is irrelevant, because UPRIGHT LAW has not filed any Chapter 13 Bankruptcy cases in the Eastern District of Tennessee since August 18, 2016.

UpRight Law responded to the Amended Motion concerning Initial RFP 23 by stating that "at the time of the entry of the Lodestar order on August 18, 2016, UpRight Law did not have any clients who were 'in the pipeline' for filing in the Eastern District of Tennessee, Northern Division." The Court directs UpRight Law to amended its response to Initial RFP 23 to so state

52

because a statement in UpRight Law's brief filed in response to the Amended Motion is an

insufficient discovery response under Rules 26 and 34.

18.    *Initial RFP 24*

**REQUEST NO. 24:**  Produce for inspection and copying a copy of any and all documents or correspondence in any of the Relevant Proceedings, or in any Other E.D. TN Cases, showing or in any way related to the assignment of any of UpRight's Partner Attorney(s) to the Client, the notification of the Partner Attorney(s) as to the Client, the notification of the Client as to the Partner Attorney(s), and the execution of any Retainer Agreement(s) by the Partner Attorney and the Client.

**AMENDED RESPONSE:** UPRIGHT LAW objects to Request No. 24 on grounds that it is overly broad and unduly burdensome, and is not proportional to the needs of the case. Subject to these objections, and its General Objections, UPRIGHT LAW will produce the Chapter 7 and Chapter 13 Retainer Agreements for Ms. Haynes, Ms. Hagstrom, and Ms. Wright, and the Salesforce Records for Ms. Haynes, Ms. Hagstrom, and Ms. Wright, as well as a revised privilege log describing any redactions.

At the June 29 hearing, UpRight Law agreed to provide documents responsive to Initial

RFP 24 for the Eight Cases.  Accordingly, the Amended Motion is granted to the extent of the

agreement.

19.    *Second Interrogatory Numbered 16 and Second RFP 1*

**INTERROGATORY NO. 16:**   In regard to the local Partner Attorney Grace Gardiner and any employee or staff member in her office specified in Interrogatory No. 14 above, identify any and all training, reference materials, guides, or other instruction or resource given by UpRight Law to such persons in regard to practices and procedures for handling UpRight Law cases.

**ANSWER:** In addition to its General Objections, UPRIGHT LAW also objects to Interrogatory No. 16 as being overly broad and unduly burdensome. Further, UPRIGHT LAW objects to Interrogatory No. 16 on the grounds that it seeks information not proportional to the needs of the case considering: (1) the amount in controversy, (2) the scope of issues set forth in in the Court's January 5, 2017, Memorandum and Order, (3) the irrelevance of the information sought to resolving any issues in this contested matter, and (4) the burden and expense to UPRIGHT LAW relative to the likely benefits of the discovery. See Fed. R. Civ. P. 26(b)(l). Additionally, UPRIGHT LAW objects to Interrogatory No. 16 as vague because it is unclear what "resource" means to the Chapter 13 Trustee. Finally, UPRIGHT LAW objects to Interrogatory No. 16 as unreasonably cumulative and duplicative of

53

materials already produced in response to the Chapter 13 Trustee's First Set of Interrogatories and Requests for Production of Documents to Upright Law.

Subject to these objections and its General Objections, UPRIGHT LAW provided Ms. Gardiner with the following documents: Best Case Training & Handling Clients Under the New Model (Exhibit D), Instructions for Getting Paid on File & Discharge (Exhibit E), Instructions for Uploading Docs in Salesforce (Exhibit F), Partner Hand-Off Instructions (Exhibit G), What to Expect & How to Handle Your First Client Under the New Model (Exhibit H), October 8th Best Case Training (Exhibit I), October 13th Best Case Training (Exhibit J), McEldowney email Providing Phone Support for Salesforce (Exhibit K), and UpRight Partner Handbook (Exhibit L).

**REQUEST NO. 1:** Produce for inspection and copying all documents, photos, materials and/or communications reviewed by you in making your Answers to the preceding Interrogatories, or which are identified in your Answers to the preceding Interrogatories or are responsive thereto, or otherwise constitute or contain a source of information in connection with the preparation of your Answers to the preceding Interrogatories.

**RESPONSE:** UPRIGHT LAW objects to Request No. 1 on grounds that it is overly broad and calls for information protected by the attorney-client privilege and attorney work product doctrine. Subject to these objections, and its General Objections, UPRIGHT LAW has previously produced the documents referenced in response to Interrogatory No. 2 as a response to Request for Production No. 1 in the Chapter 13 Trustee's First Set of Interrogatories and Requests for Production. UPRIGHT LAW has also previously or contemporaneously produced the documents referenced in response to Interrogatory No. 16 as a response to Request for Production No. 1 in the Chapter 13 Trustee's First Set of lnterrogatories and Requests for Production. UPRIGHT LAW has also produced Exhibits A through L with these Answers, Responses, and Objection to Chapter 13 Trustee's Second Set of lnterrogatories and Requests for Production of Documents.

As with Initial RFP 18, the central issues for this request are UpRight Law's claims of attorney-client privilege and application of the work-product doctrine. For the reasons discussed *supra*, the Court overrules UpRight Law's objection to production of documents on the basis of privilege or protection. As for UpRight Law's objection that the requests are overly broad, unduly burdensome, and not proportional to the needs of the case, the Court disagrees. The information sought is relevant to how UpRight Law works with its local attorneys, and Grace Gardiner in particular for these requests, which is highly relevant to the ultimate question under § 504. All

objections by UpRight Law to Second Interrogatory numbered 16 and Second RFP 1 having been overruled, UpRight Law shall amend its responses to provide the information and documents sought by the Chapter 13 Trustee.

## VII.  SANCTIONS

The Chapter 13 Trustee seeks sanctions against UpRight Law and provided an affidavit reflecting attorneys' fees totaling $23,400.00 for work necessary to compel UpRight Law to provide discovery responses in this case.  The affidavit includes a list of tasks performed in connection with the discovery dispute, but does not provide a detailed accounting of the time expended on the listed tasks.

UpRight Law argued in opposition to the sanctions request, asserting that its three-business-day delay in providing responses to the Second Interrogatories and Second RFP and its one-business-day delay in providing its Amended Responses is not sufficient grounds for any sanction. [*Wright* Doc. 231, p. 36.]  Upright Law also contends that the Chapter 13 Trustee has not shown any prejudice by the delay. [*Id.*, p. 37.]  UpRight Law denies the Chapter 13 Trustee's allegation that UpRight Law has intentionally delayed the progress of discovery, pointing to its good faith agreement to respond to the trustee's Second Interrogatories even though they exceeded the number of interrogatories permitted under Rule 33. [*Id.*, pp. 36-37.]  UpRight Law also argues that "[t]he Chapter 13 Trustee can only seek sanctions if UpRight Law has violated an Order of this Court related to discovery."  [*Id.*, p. 37.]

The Federal Rules of Civil Procedure are the starting point for the sanctions analysis.  Rule 37 contains several sanctions provisions.  UpRight Law's argument that sanctions are unavailable except on a showing that a court order was violated is based on a review of Rule 37(b), which concerns sanctions for failure to comply with a court order.  Although UpRight Law had not violated any discovery order as of the filing of the Amended Motion, UpRight Law has violated the Court's

55

order during the June 29 hearing to provide specific information in the privilege logs.  Also,

UpRight Law has still failed to comply with that directive, which failure was included in the July 26

Order setting the Amended Motion for hearing on August 3.  As discussed *supra*, although UpRight

Law finally amended the privilege and redaction logs to include some of the information the Court

directed UpRight Law to include, the final – which was the fourth – iteration of the logs (*i.e.*, the

Third Amended Logs) still does not contain a description of the role for each person identified in the

logs for each item listed.

 Rule 37(b)(2)(C) provides:

> ***Payment of Expenses.***  Instead of or in addition to the orders above, the court *must order* the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

(Emphasis added.)  Thus, under Rule 37(b)(2)(C), the Court has no choice but to sanction UpRight

Law for the trustee's legal expenses incurred by UpRight Law's failure to comply with the June 29

directives.[21]  UpRight Law has made no showing that its non-compliance was substantially justified

or any other circumstance that would make an award of expenses unjust.

 Notably, if the only source of possible sanctions here were Rule 37, the Court could only

sanction UpRight Law for the Chapter 13 Trustee's expenses incurred as a result of UpRight Law's

failure to comply with the June 29 directives when it filed the First Amended Logs on July 14 and

following; however, two other sanctions provisions are also included in Rule 37.

 First, Rule 37(a)(5) provides for the payment of expenses if a motion to compel discovery is

granted.  Specifically, Rule 37(a)(5) provides:

---

[21] And, if the Court were to sanction only the non-compliance with the June 29 directives, the Court might choose to sanction Attorney Guinn (as opposed to UpRight Law) because he informed the Court at the August 2 hearing that it was his fault that the First Amended Logs filed on July 14 did not comply with the Court's directives.  Because the Court finds that the problems after June 29 are not the major consideration for imposition of sanctions, the Court will not impose any sanctions on Attorney Guinn under Rule 37(b)(2)(C).

**(5) *Payment of Expenses; Protective Orders.***

**(A) *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing).*** If the motion is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

**(i)** the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

**(ii)** the opposing party's nondisclosure, response, or objection was substantially justified; or

**(iii)** other circumstances make an award of expenses unjust.

**(B) *If the Motion Is Denied.*** If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

**(C) *If the Motion Is Granted in Part and Denied in Part.*** If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and *may*, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.

Fed. R. Civ. P. 37(a)(5) (emphasis added).

Here, the overwhelming majority of issues raised in the Chapter 13 Trustee's Amended Motion were decided in favor of the trustee, which means that Rule 37(a)(5)(C) applies, authorizing the Court to exercise discretion to award reasonable expenses for the Chapter 13 Trustee's Amended Motion.

Rule 37(d) also authorizes sanctions under certain circumstances. Subsection (d) governs a party's failure to serve answers to interrogatories under Rule 33 or respond to a request for inspection under Rule 34. Because UpRight Law did not fail to respond to the discovery requests, I

57

find that Rule 37(d) does not provide a ground the Court to award sanctions on the Chapter 13

Trustee's Amended Motion.

Given the chronology of this discovery dispute recited above, including most significantly

(1) the boilerplate objections not fleshed out until UpRight Law filed its response to the Amended

Motion after two hearings on the discovery dispute [*Wright* Doc. 231]; (2) UpRight Law's

abandonment of the "self-critical analysis privilege"[22] only after the Chapter 13 Trustee brief the

issue in her Motion to Compel; (3) the recalcitrance of UpRight Law concerning the privilege logs;

and (4) the necessity of five hearings because of UpRight Law's conduct, the Court finds it

appropriate to sanction UpRight Law in the amount of $15,000.00[23] for the Chapter 13 Trustee's

expenses incurred in connection with pursuit of the Motion to Compel and Amended Motion.

## VIII.  CONCLUSION

The Court finding that the Amended Motion is well taken in most respects, UpRight Law

must amend its responses to the Chapter 13 Trustee's discovery requests as detailed herein.  In

addition, the Court awards expenses to the Chapter 13 Trustee under Federal Rule of Civil

Procedure 37(a)(5)(C) and (b)(2)(C) in the amount of $15,000.00.

---

[22] Notably, the self-critical analysis privilege "has led a checkered existence in the federal courts."  *Bagley v. Yale Univ.*, 315 F.R.D. 131, 151 (D. Conn. 2016) (quoting *Wimer v. Sealand Serv., Inc.*, No. 96 Civ. 8730, 1997 WL 375661, at *1 (S.D.N.Y. July 3, 1997)).  On the rare occasion when a court has acknowledged the privilege, it has been applied "in a limited and restricted manner."  *Id.*  "It only applies to the analysis or evaluation itself, and not to the facts which are analyzed . . . [and] must be balanced against the societal interest in discovery as it contributes to the full and fair adjudication of the issues invoked in litigation." *Id.* (quoting *Wimer*, 1997 WL 375661, at *1).

[23] The Court does not award the full fee sought by the trustee because the affidavit does not provide specifics to allow a determination as to the reasonableness of the time expended.

An order consistent with this Memorandum Opinion will issue.


FILED:  August 11, 2017

BY THE COURT


*/s/ Suzanne H. Bauknight*


SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE